THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
COY MEEKS *et al.*, Defendants-Appellants.

Fourth District   No. 14550

Opinion filed April 28, 1978.

DiNatale & Montemurro, of Oak Park (Anthony M. Montemurro, of counsel), for appellants.

John L. Harshman, State's Attorney, of Pittsfield (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
Following a jury trial in the circuit court of Pike County, defendants Coy Meeks, Ronald Musso, and Donald Schuld, Jr., were each convicted of burglary. Meeks was sentenced to a term of 3 to 11 years' imprisonment. Musso and Schuld were each sentenced to a term of 2 to 8

years' imprisonment. On appeal, defendants raise questions concerning (a) the sufficiency of the information with which they were charged, (b) the sufficiency of the evidence to convict, (c) the correctness of rulings by the trial court denying their pretrial motions to quash a search warrant, to suppress evidence and requesting separate trials, (d) the admissibility of evidence offered by the State, and (e) the cross-examination of a prosecution witness.

The defendants were charged in a single-count information with burglary in that they, without authority, knowingly entered a railroad car, the property of Norfolk & Western Railroad Company, Inc., a Virginia corporation, with the intent therein to commit a theft. Each defendant entered a plea of not guilty to the charge. On the date of trial, prior to impaneling the jury, the trial judge, in his chambers, alerted the parties to the fact that the information did not, in its body, name the defendants as the alleged perpetrators of the offense. The State's Attorney immediately moved that the information be amended by inserting the names of the three defendants thereon. Counsel for the defendants objected to the timeliness of the amendment. The trial court permitted the amendment.

On appeal, defendants contend that the trial court acted improperly in suggesting that the information be amended. Defendants further maintain that it was error to proceed to trial upon the amended information, it not having been reverified nor resworn to and they not having entered a plea thereto.

■■ ■ The original information named the three defendants in its caption but did not name them in the body of the charge. The amendment suggested by the court added their names to the body of the charge as well. The amendment neither added a new offense nor changed the particulars of the offense charged. Obviously, the defendants already knew that they were charged with the offense. Defendants did not cite this point as error in their lengthy post-trial motion. The failure to do so waived the point (*People v. Rogers* (1975), 32 Ill. App. 3d 788, 336 N.E.2d 784) unless it constituted plain error (*People v. Jones* (1976), 40 Ill. App. 3d 771, 353 N.E.2d 79). Under the circumstances, the suggestion by the court was clearly not plain error.

■■ Similarly, the defendants' right to a reverification of the information as amended was waived by their proceeding to trial without specifically objecting thereto. *People v. Bradford* (1975), 62 Ill. 2d 21, 338 N.E.2d 182.

In support of their contention that error occurred because they were not required to plead anew to the amended charge, the defendants cite the statement in *People v. Evenow* (1934), 355 Ill. 451, 189 N.E. 368, that the entry of a plea is mandatory and the decision in *People v. Moore* (1959), 21 Ill. App. 2d 9, 157 N.E.2d 94.

In *Moore*, the information was amended during trial without a new

plea being entered. On appeal, the court reversed the defendant's conviction, ruling that the amendment caused the defendant to be charged with a different offense from that originally charged and that therefore, the amended information should have been reverified and a new plea entered thereon. The court also noted that the defendant had objected to the amendment and had not been furnished with a copy of the amended information.

In *People v. Clarke* (1950), 407 Ill. 353, 358, 95 N.E.2d 425, 428, relied upon by the State, the supreme court ruled that "if the amendment [to the information] involves no material change in the averments of the original, the original information is not abandoned and trial may be had upon it as amended, without a renewal of the formalities originally observed." Subsequent cases have held that where the charge in the amended complaint is substantially the same as that in the original, a new plea is unnecessary (*People v. Robinson* (1974), 20 Ill. App. 3d 152, 313 N.E.2d 213).

■■ Here defendants had entered a plea of not guilty to the original information. They had been furnished a copy thereof and clearly were aware that they were the individuals charged therein. As previously discussed, the amendment to the information made no material change in the offenses charged. Therefore, a new plea to the amended information was not required.

The evidence supporting the convictions of the defendants was circumstantial. The State's case rested heavily upon the testimony of Charles T. McGuinty, a special agent for the Norfolk & Western Railroad, and Earl McFeeters, an Illinois State trooper. The substance of McGuinty's testimony was as follows: On September 10, 1976, he proceeded to Hadley, Illinois, to inspect train TC—1 which had stopped there due to its having improperly passed through a switch. Upon arriving and inspecting the train, he observed that the seal and the security clamp on car #56486, which contained a tobacco shipment, were missing. These devices were generally used to secure a car until arrival at its designated destination. While further investigating, he discovered cases of cigarettes stacked near a right-of-way fence a short distance from the unsecured railroad car. Upon this discovery, he radioed for assistance. This was at approximately 11:35 p.m.

While waiting for aid, McGuinty observed a dark colored, late model pickup truck with a white camper shell and a third headlight mounted on the front bumper between the other two headlights proceeding on the road near to where he was waiting on the railroad tracks. The time was approximately 12:35 a.m. This vehicle traveled a short distance beyond the railroad tracks, abruptly stopped, and then sped off at a high rate of speed following one or two subjects having entered it. These subjects had

emerged from the weeds on the side of the road where the cases of cigarettes were stacked.

Upon the arrival of Trooper McFeeters, the two of them proceeded to where McGuinty had seen the individuals alight to the stopped truck, observed a path leading through a farm field back in the direction of the stacked cigarette cases and, upon coming upon the cases, found approximately 37 cases of tobacco products stacked in two locations near to each other.

Later upon returning to the crossing where the tracks crossed the road, McGuinty observed the same pickup truck which he had seen previously that night approaching. McFeeters stopped the vehicle which defendant Meeks was driving and containing defendants Musso and Schuld as passengers, advised the defendants of their rights, questioned each individually in his squad car and then escorted them to State Police headquarters in Pittsfield.

While at Pittsfield, defendant Meeks attempted to destroy his driver's license by flushing it down a bathroom stool. Later, defendant Meeks, accompanied by McFeeters, McGuinty and others, proceeded outside to the pickup truck in order that further identification of Meeks might be obtained. Meeks consensually unlocked the rear portion of his truck, procured a cloth zipper bag therefrom and opened the bag so that its contents were in open view. (The consensual nature of this viewing as well as identification of the items observed was verified by the testimony of Trooper McFeeters and three other prosecution witnesses who had been present during the occurrence.) The bag contained, among other items, a security seal of the type used by the railroad in securing shipments. The items were taken into custody. A subsequent search of the entire vehicle was conducted, revealing bolt cutters, walkie-talkie radios, a CB radio, a police scanner, a pair of gloves, a tackle box, three fishing poles and a cable with copper ends of the type used by railroad personnel in changing track switches.

An investigation of the scene of the burglary the next day turned up a cable and security seal similar to those used to secure railroad cargo. This was found in the weeds near to where the unsecured railroad car had been observed.

The testimony of McFeeters corroborated that given by McGuinty in reference to the discovery of the cases of tobacco products, the stopping of the vehicle containing the defendants, the interrogation of the defendants, the transporting of them to Pittsfield and the searches of defendant Meek's vehicle. Additionally, McFeeters testified as follows: While he questioned each defendant individually at the scene of the burglary, Meeks and Musso indicated that they had just come from Chicago by way of I-55 and were trying to locate Kay's Corral—a fishing

establishment. Musso also stated that they were looking for a place to buy a 6-pack and that he was not familiar with the area. Schuld also stated that they were looking for a 6-pack. These reasons were repeated by defendants upon being questioned at police headquarters.

With reference to the viewing of the cloth bag located in defendant Meek's vehicle, McFeeters stated that it contained a file, a punch, a screwdriver, a package of Winston cigarettes stamped "not for sale in U.S.," and a number of railroad torpedoes, a device used as a signal to train engineers. He also stated that a later search of the vehicle incident to a search warrant revealed bolt cutters, a cable with copper ends similar to a shunt cable, various radios and a police scanner.

On cross-examination, both McGuinty and McFeeters admitted that they had no personal knowledge of the defendants' involvement in the burglary. McGuinty also admitted that he could not identify any of the defendants as being the driver of the pickup truck which passed him on the road at 11:35 p.m., although he repeated that the pickup which was stopped by McFeeters and in which the defendants were riding was the same vehicle which he had seen earlier.

Two further witnesses testified on behalf of the State. Harold Turner, a mechanic from Quincy, testified that he had rounded and balanced defendant Meeks' pickup truck tires on the morning of September 10, 1976. Esther Seidelmeier, owner of the Colonial Inn in East Hannibal, Illinois, approximately 30-35 miles from the location of the burglary, testified that she remembered defendants Meeks and Musso as motel guests in March, April, July, August and October of 1975 and in January of 1976.

The sole evidence presented on behalf of the defendants was defense counsel's reading from a copy of an FBI report indicating that although the FBI ran certain technical checks on specific items, none of these items were found to be connected with the alleged tools of the burglary. The record does not indicate what tools or items were checked.

Where, as here, the proof of defendants' guilt is circumstantial, the circumstances proved must not only be consistent with defendants' guilt but also inconsistent with any reasonable hypothesis of their innocence. (*People v. Branion* (1970), 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213.) Defendants' principal contention on appeal is that the evidence failed to meet that test as to any of them.

Under the evidence presented, the jury could believe the following circumstances to have been proved: (1) the offense and the arrest of the defendants occurred in an isolated and remote area very late at night or early in the morning; (2) a vehicle drove up and picked up one or two people who came out of the weeds near to where the cigarette cases taken

in the burglary had been piled and drove off; (3) that vehicle was the same vehicle which later returned with the three defendants; (4) present in the vehicle were various items which could be usable in the burglary of boxcars; (5) defendant Meeks was in Quincy earlier in the day as testified to by witness Turner; (6) when apprehended, the defendants made explanations inconsistent with Meeks having been in Quincy that day, and (7) after arrest, defendant Meeks attempted to destroy his driver's license.

We must next determine if these circumstances are consistent with a reasonable hypothesis of the innocence of any of the defendants. The heart of the State's proof is the evidence that the vehicle in which defendants were apprehended was the same vehicle that was earlier in the area and which picked up one or two persons coming from the weeds. If the defendants were the same people who either came from the weeds or were in the vehicle when it was first observed at the scene, the combined effect of all of the enumerated circumstances clearly permitted the jury to determine that no hypothesis of innocence was reasonable. These same circumstances also negate a theory that the defendants entered the vehicle only after it had earlier left the scene. The remoteness of the area and the lateness of the hour particularly negate the reasonableness of this hypothesis. The hypothesis that the explanation given by the defendants was true is especially negated by the testimony that Meeks and his vehicle had earlier been in Quincy and the testimony that they were known to have been in the area previously.

■■ An untrue explanation of his presence at the scene of a crime given by an accused to investigating law enforcement officers may be considered by the trier of fact as an admission by conduct by him of his guilt. (McCormick, Evidence, §273, at 660 (2d ed. 1972).) Here, after considering all of the evidence, the jury could have decided that the explanations given by defendants for their presence at the scene were untrue. This evidence further supports the verdict.

■■ We conclude that the jury could properly have determined that the circumstances proved were highly probative of the guilt of each defendant and negated any reasonable hypothesis of the innocence of any of them.

Prior to trial, defendant Meeks filed a "Motion to Suppress Evidence" alleging that the police search of his automobile was unlawful. At the hearing on this motion, all three defendants filed a "Motion to Quash Search Warrant." Following argument on the motions by counsel, during which no evidence was presented, the trial court denied the motions. On appeal, defendants contend that the trial court erred in (1) denying their motion to quash and (2) failing to conduct a hearing on the motion to suppress.

In their motion to quash, defendants maintained that the statements

made in the complaint for search warrant were based upon information illegally obtained and that therefore, the warrant was wrongfully issued. However, a search warrant will properly issue where the complaint, on its face, alleges facts sufficient to show probable cause. (Ill. Rev. Stat. 1975, ch. 38, par. 108—3.) There is no constitutional or statutory right to inquire behind the warrant and complaint in an attempt to controvert the matters declared under oath which occasioned the finding of probable cause. (*People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121; *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, *cert. denied* (1970), 400 U.S. 882, 27 L. Ed. 2d 121, 91 S. Ct. 117.) A finding of probable cause is supported where the facts of the complaint would cause a reasonable man to believe that a crime had been committed and that the evidence is in the place to be searched. *People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26.

■■ Here, the complaint for search warrant alleged sufficient facts to support a determination that a burglary had been committed and that items used in the commission of the burglary were present in defendant Meeks' vehicle. As such, probable cause existed. The search warrant was properly issued. The trial court did not err in denying defendants' motion to quash the same.

■■ At the conclusion of defense counsel's argument in support of the motion to quash, he alerted the court to the existence of his previously filed motion to suppress evidence. Counsel indicated, at this time, that he would agree to the court's taking this motion under advisement and that, should the case proceed to trial following the court's disposition of the motion, he would be ready to proceed. Counsel did not introduce any evidence in support of this motion and made no indication of an intention to do so. As such, he is deemed to have waived his opportunity to do so.

Defendants also question, on appeal, the admissibility of evidence introduced by the State on the basis of relevancy, in general, and connection with defendants Musso and Schuld in particular. This evidence consisted of exhibits introduced by the State, including a charger for walkie-talkie radios, a file, a walkie-talkie, a CB radio, four railroad torpedoes, such as used to signal train crews to reduce speed, a package of Winston cigarettes stamped "not for sale in U.S.," a police scanner, a security seal as used to secure railroad cars, two security cables also used to secure railroad cargo, a copper-ended cable used by railroad personnel to change track switches, an explosive signaling device for use with flares, a third headlight taken from defendant Meeks' vehicle, and a pair of bolt cutters.

It is clear that physical evidence may be introduced and admitted at trial where there is proof to connect it to the defendant and to the crime.

(*People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848.) If an object is shown to be connected with a defendant, admissibility does not require a showing that the evidence was actually used in the offense charged as long as it is shown that the object is at least suitable for the commission of the crime. *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33.

None of the items here in question were shown to have been used in the commission of the burglary in question. However, each one, with the exception of the package of cigarettes, was suitable as an aid in the commission of a burglary involving a train transporting cargo by rail.

The defendants Musso and Schuld contend, however, that since they were only shown to be passengers in the pickup truck they were not shown to have possessed the various objects and thus connection to them is not shown. They rely upon *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401, where a conviction was reversed as to defendant Babitsch when objects taken from a vehicle owned by another defendant were admitted into evidence as to Babitsch although he was not shown to have ever been in the vehicle and was not otherwise shown to be connected with the evidence.

■■ In *People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112, the court indicated that possession by an accused of objects used or usable in an offense is not the sole criterion for determining their admissibility as to him. Here, some of the objects were in the front seat of the vehicle, easily accessible to all defendants. Others were in a closed area in back of the vehicle. All were available to all defendants. We recognize that availability of items suitable for use in the commission of a crime alone may not always make those items admissible as to an accused charged with that offense. However, under the unusual circumstances here where defendants were apprehended in an isolated area while having available items of a particular and unusual nature and there being no evidence indicating they had not been in one another's company for an extended period of time, the items in question, with the exception of the package of cigarettes, were relevant as to all three defendants and thus were properly admitted. The package of cigarettes should not have been admitted but we do not find the error in its admission to be reversible.

Defendants Musso and Schuld filed a motion for severance prior to trial based upon the theory that the evidence taken from the vehicle would be inadmissible as to them and that its introduction into evidence even if limited to Meeks would be prejudicial. Because of our ruling that the evidence, except the package of cigarettes, was admissible as to all defendants, no reversible error occurred in the denial of the motion.

Defendants further maintain that at no time did the State elicit any

testimony proving the corporate entity of the Norfolk & Western Railroad as alleged in the information, thus failing in a necessary area of proof.

Where ownership of burglarized premises is alleged to be in a corporation, the legal existence of that corporation is a material fact which must be proved. (*People v. McGuire* (1966), 35 Ill. 2d 219, 220 N.E.2d 447; *People v. Nelson* (1970), 124 Ill. App. 2d 280, 260 N.E.2d 251.) However, proof of corporate existence may be shown by oral testimony if no objection is made to that method of proof. *People v. Gordon* (1955), 5 Ill. 2d 91, 125 N.E.2d 73; *Nelson*.

■■ Corporate existence has been ruled to have been sufficiently established by references to "Sears," "Sears and Roebuck," "Sears Corporation" and "Sears Warehouse" (*Nelson*) and to shoes in question being Thom McAn products and references to a "company" auditor and to the "company" (*People v. Childress* (1971), 2 Ill. App. 3d 319, 276 N.E.2d 360). Here, witnesses identified as employees of Norfolk & Western made references to "one of *our* trains," the company, Norfolk & Western car #56486 and property belong to the Norfolk & Western Railroad. We deem these references sufficient to prove the corporate entity.

Finally, in their written briefs, defendants contended that they were not permitted to cross-examine George W. Ruff, a witness called by the State. However, during oral arguments, this contention was waived. The record reveals that, in fact, cross-examination of this witness was permitted.

The judgments of conviction of the trial court are affirmed.

REARDON and WEBBER, JJ., concur.