THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY NOASCONO, Defendant-Appellant.

Fifth District   No. 77-519

Opinion filed February 4, 1980.

---

[1] Justice Dorothy W. Spomer replaced Justice Peyton H. Kunce, who retired after oral argument.

John H. Reid and John M. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Raymond F. Buckley, Jr., and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON[1] delivered the opinion of the court:

Defendant Larry Noascono was convicted by a jury of burglary, theft of property valued at less than $150, and possession of a controlled substance (glutethimide). The trial court sentenced him to concurrent sentences of six years and eight months to 20 years for burglary, three years and four months to 10 years for possession of a controlled substance, and 364 days for theft. Defendant contends (1) that certain physical evidence and scientific tests were admitted without proper foundation; (2) that defendant was improperly convicted of both theft of a controlled substance and possession of the same controlled substance when both charges constituted a single illegal act; and (3) that the trial court improperly failed to consider sentencing under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.10). We affirm.

The evidence adduced at trial indicated that Campbell's Drug Store in Marion, Illinois, was burglarized on March 26, 1977, at approximately 3:30 a.m. A witness testifying for the State, Vance Schmidt, observed a person running from the area of the drug store, lost sight of him at 3:37 a.m., and radioed to the police a description of the person he saw running.

The alarm from the drug store also sounded at the Marion police station, and Officer Tom Sprague drove to the scene. Upon arrival he found the front and rear glass doors broken, the cash drawer open, the

---

[1] Mr. Justice Harrison replaced Mr. Justice George J. Moran, who retired after oral argument..

change bin on the floor, and three bottles containing pills on the counter near the rear door. Detective Jerald Kobler from the Williamson County Detective Unit was called to the scene to collect evidence. He collected samples of broken glass from the floor near the doors and separately packaged them. Leaving Detective Kobler and another officer at the scene, Officer Sprague returned to duty.

Upon resumption of street patrol, Officer Sprague stopped defendant's car for an alleged brake light malfunction. Sprague testified that the defendant fit the description received earlier of the person running from the area of the drug store, so he asked defendant to follow him to the police station, where they arrived at 4:12 a.m. Witness Schmidt was called to the station to observe the defendant. Schmidt at that time said defendant fit the description of the man he had seen leaving the area of the drug store, but made no positive identification. However, Schmidt was more definite at trial that it was defendant whom he had seen running.

Certain material, including a bottle of pills and money, was found in defendant's possession which the State tried to connect up in an effort to place defendant at the scene of the crime. We need not consider this testimony here. Suffice it to say that defendant was charged with the crime and transported to the Williamson County jail where he was made to change his clothes. The clothes were packaged and sent to the F.B.I. in Washington, D.C., along with the glass samples Detective Kobler had taken from Campbell's Drug Store, for analysis.

The State's major witness, Forrest Smith, who worked in the mineralogy unit of the F.B.I. laboratory in Washington, D.C., testified that he was trained in the examination of glass, soil, safe insulation, and other materials. He received the defendant's clothing and picked out what appeared to be bits of glass. He examined these pieces under a microscope and claimed to determine from their appearance that they were glass. Smith performed light refraction and dispersion tests on the particles from defendant's shoes, socks, and clothing, and on samples from Campbell's Drug Store. He testified that the dispersion and refraction measurements of particles on the defendant's clothing matched exactly the dispersion and refraction measurements of the samples from Campbell's. Smith opined that the particles on defendant's clothing "very probably" came from the same source as the samples from Campbell's, but he could not say positively that they came from the same source. Yet, Smith testified that no chemical tests were performed to determine if the particles on defendant's clothing were glass or to determine the composition of these particles.

Defendant, on the other hand, testified that he did not enter Campbell's Drug Store, that he did not take any drugs or monies from the

store, and that he was not running from that area on the morning of the breakin. He testified that on the evening and morning of the Campbell breakin, he was working alone until 4 a.m. at the Marion Water Plant where he was employed as a filter plant operator. He stated at trial that he worked around and with brown crystaline sand and lime, a fine white powder which when wet forms crystals that look like glass. He further testified that at 3:40 a.m., three minutes after the approximate time Vance Schmidt observed the running man near Campbell's, defendant was at the Marion Water Plant speaking on the phone to Bennie Fischer, his relief man. Bennie Fischer testified that the defendant called to wake him at 3:40 a.m. He said he looked at the clock when defendant called, and that the clock was accurate, though perhaps a minute or so off. Fischer was certain it was the defendant who called because defendant had called him to wake him on numerous occasions and Fischer was familiar with defendant's voice. At about 3:55 a.m., defendant called Fischer's home again, because Fischer had not yet arrived at the plant. The State stipulated to a statement by Mrs. Bennie Fischer that someone called at about 4 a.m. asking for her husband. After Fischer arrived at about 4:01 a.m., defendant left work and drove down Creal Springs Road where he planned to go fishing. He was stopped by Officer Sprague and subsequently followed Sprague to the Marion police station.

At the close of the State's case, defendant moved to strike the testimony of Mr. Smith with respect to the particles taken from his clothing and the tests thereon, and objected to the introduction of those particles into evidence. Defense counsel argued that the State had failed to establish a proper chain of possession. However, the trial court overruled defendant's motion, and he was subsequently convicted and sentenced.

● ■■ Appellant first contends that an inadequate foundation was laid for the admission into evidence of the "glass" particles taken from his clothing and scientific tests performed thereon by Forrest Smith because a proper chain of custody was not established. While certain objections in this regard were made at trial, no post-trial motion was filed. The State argues, therefore, that this contention has been waived. We agree. Section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 116—1) clearly mandates that "a written motion for a new trial *shall* be filed by the defendant within 30 days following the entry of a finding or the return of a verdict" and that it "*shall* specify the grounds therefor." (Emphasis added.) It is well established that the failure to raise issues in a written post-trial motion constitutes waiver of those issues on appeal unless they involve plain errors affecting substantial rights which the appellate court may consider as a matter of grace. (*People v.*

*Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707; *People v. Faulkner* (1978), 64 Ill. App. 3d 453, 381 N.E.2d 321; *People v. Meeks* (1978), 59 Ill. App. 3d 521, 375 N.E.2d 1001; *People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) Upon review of the entire record we find that this contention does not involve plain error and we, therefore, refuse to entertain it.

Appellant relies on *People v. Lamparter* (1977), 56 Ill. App. 3d 823, 371 N.E.2d 997, for the proposition that the failure to file a post-trial motion here is the equivalent of ineffective assistance of counsel and that the alleged error should be deemed preserved on appeal. However, *Lamparter* is inapposite to the case at bar. That case involved a situation where counsel objected to prejudicial and reversible errors at trial but failed to file a post-trial motion. We held that those errors were cognizable upon appeal because they amounted to plain error. However, the point alleged in the present case is not of that caliber. Appellant's contention is without merit.

■■ Appellant next argues that he was improperly convicted of both unlawful possession of a controlled substance and theft because both offenses were the result of the same physical act. He therefore requests that his theft conviction be vacated. This we refuse to do. As the State properly notes, theft is not a lesser-included offense of unlawful possession, because the former involves the intent to permanently deprive which is an element not required of the latter. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1); Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b). See Ill. Rev. Stat. 1977, ch. 38, par. 2—9(a).) Therefore, under the guidelines established in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, the convictions with concurrent sentences could be entered since multiple offenses arose from a series of closely related acts but which offenses were not included within each other.

Appellant finally contends that the trial court failed to exercise its discretion in not considering his eligibility for treatment under the Dangerous Drug Abuse Act. (Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq.*) Section 10 of the Act provides in pertinent part as follows:

"If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible to make the election provided for under Section 8, the court may advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by the Department [of Mental Health and Developmental Disabilities of the State of Illinois]." (Ill. Rev. Stat. 1977, ch. 91½, par. 120.10.)

An "addict" is defined by section 3.03 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.3—3) as

"* * * any person who habitually uses any controlled substance so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of controlled substances as to have lost the power of self control with reference to his addiction."

It is clear that whether the trial court "has reason to believe" a convicted individual is an addict must be resolved from the facts of each particular case, as there are no clear statutory guidelines. *People v. Newlin* (1975), 31 Ill. App. 3d 735, 740-41, 334 N.E.2d 349.

The presentence report which was before the trial court stated that appellant "has an extensive history in the use of alcohol and later developed a drug history. * * * According to Noascono, he has not used either since 1974." An Illinois Department of Corrections report attached to the presentence report, dated May 13, 1974, and relating to a previous conviction, stated that appellant had a "long-standing abuse of alcohol and more recently addiction of other drugs," compounded "his overall deficiencies by alcohol and other drug abuse," and needed to "develop ways of handling his problems without reverting to compensatory drug abuse." However, a supplemental report by the Illinois Department of Corrections, dated February 4, 1976, stated that "[i]t is believed that he has matured to the point that he will no longer need either drugs, nor [*sic*] alcohol." In letters appended to the presentence report neither appellant nor his wife mentioned any drug abuse or addiction. And appellant did not state that he was an addict or petition the trial court for treatment under the Dangerous Drug Abuse Act.

■ We do not believe the information which was before the trial court compelled it to have "reason to believe" that appellant was an addict. Neither appellant nor his counsel claimed such status. Even assuming, as appellant argues, that he had been an addict approximately three years prior to the instant sentencing, his statement to the probation officer that he had not used drugs since 1974 belies the contention that he was an addict at the time of sentencing. In fact, a year prior to his sentencing, his incarceration and treatment in the Illinois Department of Corrections led the clinical services supervisor and assistant warden for programs services to believe, as stated in the February 4, 1976, supplemental report, that he no longer needed drugs. These statements, together with the rest of the information before the court, make it clear that the trial court could not have "reason to believe" that appellant was a narcotics addict. Therefore, it had no duty to exercise its discretion under the Act. *People v. Morgan* (1977), 50 Ill. App. 3d 962, 965, 365 N.E.2d 1362; *People v. Davis* (1976), 42 Ill. App. 3d 485, 487, 355 N.E.2d 730; *People v. Edwards* (1975), 29 Ill. App. 3d 625, 629, 331 N.E.2d 342.

For the foregoing reasons, the judgment of the Circuit Court of Williamson County is affirmed.

Judgment affirmed.

JONES, P. J., and KARNS, J., concur.