THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHAWN BEASLEY *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 80—1874, 80—1875 cons.

Opinion filed September 22, 1982.—Rehearing denied October 19, 1982.

Ralph Ruebner, Steven Clark, and Bradley S. Bridge, all of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, and Richard B. Levy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

After a jury trial, defendants, Shawn Beasley and Larry Banks, were found guilty of burglary and sentenced to the Illinois Department of Corrections for terms of six years. On appeal, they contend: (1) that improper cross-examination of defense witnesses and improper rebuttal closing argument by the prosecution deprived them of a fair trial; (2) that the trial court erred when it admitted photographic evidence of fingerprints into evidence without sufficient foundation; and (3) that the trial court abused its discretion when it denied defendant Banks' petition for treatment under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 *et seq.*).

I

Defendants first argue that several errors made by the prosecution in cross-examination and closing argument deprived them of a fair trial. These alleged errors can be classified in 10 categories: (1) cross-examination of defense witnesses as to whether other witnesses were lying or were wrong; (2) failure by the prosecution to prove up its impeachment of defendant Banks; (3) cross-examination as to defendant Banks' post-arrest silence; (4) cross-examination of defendant Banks' alibi witnesses as to why they had not informed authorities that they were with Banks on the evening of the crime; and (5) closing argument comments which (a) allegedly deprecated the reasonable doubt standard; (b) allegedly disparaged the presumption of inno-

cence; (c) allegedly suggested to the jury that it was allied with the State in the prosecution of crime; (d) allegedly informed the jury that it was not to be concerned with the rights of defendants; (e) allegedly misrepresented the evidence; and (f) allegedly impugned the integrity of defense counsel. Defendants contend that these alleged errors, when viewed cumulatively, amounted to reversible error. Significantly, except for alleged errors falling within the fourth category, no objection was made at trial to the allegedly improper cross-examination and closing argument. Moreover, neither defendant raised any of these alleged errors in his written motion for new trial.

Failure to make a timely objection at trial to the admission of evidence operates as a waiver of the right to consider the question on review. (*People v. Baynes* (1981), 88 Ill. 2d 225, 230, 430 N.E.2d 1070; *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.) And if a defendant fails to make a timely objection at trial to allegedly improper closing argument, such error is deemed waived. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091; *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Moreover, failure by a defendant to raise an issue in his written motion for a new trial constitutes a waiver of that issue. *People v. Lucas* (1981), 88 Ill. 2d 245, 250; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

However, the waiver rule is not absolute, and error that rises to the level of plain error may be considered by a reviewing court despite the defendant's failure to preserve properly the record for review. (*People v. Baynes* (1981), 88 Ill. 2d 225, 230; *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739.) This exception to the waiver rule is embodied in Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)), which provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

Our supreme court has established the following test for applying the plain error doctrine:

"The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial."

(*People v. Lucas* (1981), 88 Ill. 2d 245, 251; *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.)

The evidence here was not closely balanced as to either defendant. See *People v. Carlson* (1980), 79 Ill. 2d 564, 576.

Erbie Wadlington, co-owner of Community Grocery and Liquor

Store located at 1018 East 93d Street in Chicago, testified that he arrived at his store at approximately 12:30 a.m. on August 22, 1979, and observed that screen bars covering the front window had been removed, that front and rear windows of the store had been broken, that liquor bottles were out of place, and that a box which was kept near the liquor counter and contained approximately $150 was missing.

Darren Bloomingberg testified that on August 22, 1979, shortly after midnight, he was walking east on 93d Street to his home when he observed defendants Beasley and Banks standing in front of the store. Bloomingberg was acquainted with both defendants. He noticed that the store's window had been broken and asked defendants what they were doing. Banks replied that they were trying to take some money. Then Bloomingberg walked away. After walking a short distance, Bloomingberg heard what he described as a "large sound like snatched bars off the window." Bloomingberg turned around and saw both defendants placing bars from the window on the ground. Then he saw Beasley crawl into the store through a hole in the window, and after this, he saw Banks bend down near the hole. At this point, Bloomingberg turned around and continued to walk home. He did not see Banks enter the store. Later that day, Bloomingberg returned to the store and spoke to one of the owners about the break in.

Fingerprint evidence corroborated Bloomingberg's testimony. A Chicago police officer testified that latent prints found on the window of the store belonged to defendant Beasley.

Officers Dean Casper and Byron Bradley of the Chicago police department testified that Beasley admitted to them that he had removed burglary bars from the store window, that he entered the store, and that he took bottles of vodka and cash. Beasley also stated that he would not sign any written statement.

At trial both defendants presented alibis. Banks testified that he was at home at the time of the burglary. His mother, sister and girlfriend gave similar testimony. Beasley's alibi testimony had no corroboration.

■ We do not consider the evidence to be so closely balanced as to constitute a basis for the application of the plain error doctrine. Further, we do not find that the cumulative effect of the alleged errors was of such magnitude that defendants were denied a fair trial.

## II
Defendants next argue that photographic evidence of fingerprints

was admitted into evidence without proper foundation, denying them a fair trial. Specifically, they contend that the admission of two photographic negatives was improper because there was no testimony that the negatives were a fair and accurate representation of the fingerprint lift the expert had taken. Similarly, defendants assert that there was no adequate foundation for admission of a photographic enlargement of one of the negatives and a photographic enlargement of a print of the third finger of Beasley's right hand obtained from Beasley's fingerprint card, because there was no testimony that either enlargement was a fair and accurate representation of the item it purported to represent.

The State responds that defendants have waived consideration of these issues on review because defendants failed to specify them in their written motion for a new trial and because defense counsel's objections at trial were based on different grounds. Although these issues may be considered to have been waived (see *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856), we have elected to consider them because the fingerprint evidence was a substantial factor in each defendant's conviction.

■ We are of the opinion that the testimony of two Chicago police officers was sufficient to establish a foundation for the admission of these exhibits into evidence. Officer Dieringer testified in detail about finding the fingerprints on the window. He placed an identification tag near the fingerprints and took two photographs of them and the tag. Then he lifted the fingerprints and tag. He identified the negatives in evidence as the photographs he took. No error is assigned to the admission into evidence of the fingerprint lift, and the two negatives clearly show the identification tag that is part of the lift. In fact, the writing on the tag can be read on the negatives.

Officer Patterson, a latent print examiner, testified that he compared the negatives with a fingerprint card of defendant Beasley, and that it was his conclusion that the latent prints depicted in the negatives were the prints of the right middle and right index finger of defendant Beasley. He also testified that he prepared the photographic enlargements in order to demonstrate to the jury how a fingerprint comparison is made. He then testified as to similarities in the two enlargements.

Defendants rely upon *People v. Donaldson* (1962), 24 Ill. 2d 315, 181 N.E.2d 131, *People v. Eagle* (1979), 76 Ill. App. 3d 427, 395 N.E.2d 155, and *People v. Mines* (1971), 132 Ill. App. 2d 628, 270 N.E.2d 265. *Donaldson* and *Mines* involve the admissibility of photographs generally. For a photograph to be admissible in evidence, the

photograph must be identified by a witness as a portrayal of certain facts relevant to an issue and be verified by such witness on personal knowledge as a correct representation of these facts. *People v. Donaldson* (1962), 24 Ill. 2d 315, 318; *People v. Mines* (1971), 132 Ill. App. 2d 628, 631.

Here the negatives were susceptible to identification by sight, and Dieringer identified them as the negatives of the photographs he took of the fingerprints before lifting them. (See *People v. Rhodes* (1980), 81 Ill. App. 3d 339, 348, 401 N.E.2d 237, *aff'd* (1981), 85 Ill. 2d 241.) In the absence of any objection at trial to the lack of testimony that the negatives were true and accurate representations of the fingerprints, we conclude that the testimony of Dieringer was sufficient to admit the negatives into evidence. In this regard, we note that the positive identification of the negatives by Dieringer was not impeached in any way. *People v. Eagle* (1979), 76 Ill. App. 3d 427, 436.

Furthermore, we conclude that in the absence of any objection at trial to the lack of testimony that the enlargements were true and accurate representations of the items they purported to represent, Patterson's testimony that he prepared the enlargements was sufficient to justify their admission into evidence.

Defendants also argue that the copy of Officer Dieringer's report was improperly admitted into evidence over defense counsel's objection that the best evidence rule precluded its admission. Dieringer, in his testimony, identified an exhibit as the report he submitted, along with the lift and the negatives, to a crime laboratory. He did not indicate that it was, in fact, a copy. In admitting the report into evidence, however, the trial court stated that it appeared to be a copy. The report is included in the record on appeal, and it appears to be a carbon copy of an evidence report.

■ There is authority for the position that a carbon copy of an original, which is made at the same time and by one impression of a typewriter or by the same stroke of a pen, is admissible without accounting for the original. (*People v. Hauke* (1929), 335 Ill. 217, 231, 167 N.E. 1; McCormick, Evidence sec. 236, at 568 (2d ed. 1972).) Further, we are of the opinion that any error in admitting the report into evidence was harmless. The report (assuming it is a copy) states only such general information as the nature and location of the offense, the victim's name, and that an imprint was taken from the broken front window. Under the "Details of Case" section, the report states: "Burglary N/R entry through front window exit back window." The fact that there was a burglary and that entry was made through the front window was established by the prosecution witnesses. Under

these circumstances, we are compelled to conclude that the admission into evidence of the report could not have contributed to the jury's verdicts.

## III

Lastly, defendant Banks contends that recent amendments to the Dangerous Drug Abuse Act required the trial court to order an examination of Banks by the Department of Mental Health and Developmental Disabilities to determine whether he was an addict and likely to be rehabilitated through treatment, and that the trial court erred when it failed to do so. At the time of the sentencing hearing, June 25, 1980, section 10 of the Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.10), in relevant part, provided:

> "If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible to make the election provided for under Section 8, the court *shall* advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by the Department [of Mental Health and Developmental Disabilities]. \*\*\*

> If the individual elects to undergo treatment \*\*\* the court shall order an examination by the Department to determine whether he is an addict and is likely to be rehabilitated through treatment. \*\*\*"[1] (Emphasis added.)

This section had been amended by Public Act 81—851, effective September 20, 1979, which substituted "shall" (underlined in the above quotation) for "may."

Prior to the amendment substituting "shall" for "may," a trial court was not required to advise a defendant of the election to submit to treatment even when it had reason to believe that he was an addict; rather the judge was only required to exercise his discretion in considering whether to offer the defendant drug treatment. (*People v. Ruffin* (1977), 46 Ill. App. 3d 448, 453-54, 361 N.E.2d 49; see *People v. Kuesis* (1981), 83 Ill. 2d 402, 407, 415 N.E.2d 323; *People v. Warren* (1977), 69 Ill. 2d 620, 626-28, 373 N.E.2d 10.) Public Act 81—851 removed this initial discretion from the trial court. Now when there is reason to believe an eligible defendant is an addict he must be advised of his option to elect treatment. (*People v. Chaput* (1981), 100 Ill.

---

[1] This section was amended by Public Act 81—1509, effective September 26, 1980, which substituted "a licensed program designated by the [Dangerous Drugs] Commission" for "the Department."

App. 3d 982, 984, 427 N.E.2d 595; *People v. Davis* (1981), 95 Ill. App. 3d 1097, 1098, 420 N.E.2d 1035.) Therefore, the key question becomes was there reason to believe that Banks was an addict.

■ Other reviewing courts have found that there was reason to believe a defendant was an addict even when the issue of treatment under the Dangerous Drug Abuse Act was not considered by the trial court. (*People v. Chaput* (1981), 100 Ill. App. 3d 982, 983-84; *People v. Davis* (1981), 95 Ill. App. 3d 1097, 1097-98.) Thus, we conclude that we have authority to review the facts to determine whether there was reason to believe that Banks was an addict, even though the trial court made no such determination.

Whether a court has reason to believe that an individual convicted of a crime is an addict must be determined from the facts presented in each particular case. (*People v. Noascono* (1980), 80 Ill. App. 3d 921, 926, 400 N.E.2d 720; *People v. Miller* (1976), 43 Ill. App. 3d 290, 292, 356 N.E.2d 1345; see Ill. Rev. Stat. 1979, ch. 91½, par. 120.3—3.) We note that a mere statement by an eligible defendant that he is an addict entitles him to an advisement of the probation and treatment possibilities under the Act, and believe that consistent with this statutory scheme little should be required to give a court reason to believe defendant is an addict. Here Banks testified under oath that he was 23 years old. While in high school he used marijuana. He had used heroin, cocaine, and "tees and blues" with regularity until his incarceration. This testimony was sufficient to give the court reason to believe Banks was an addict, to require the court to inform him of his election rights under the Act, and to order his examination by the Department of Mental Health and Developmental Disabilities, if he so elected.

At the conclusion of Banks' testimony, the court referred to a presentence investigation which said: "The defendant states he decided to quit drugs 2 years ago. He states he quit through 'cold turkey' and has abstained even from marijuana."

■ The court denied Banks' petition for treatment because it could be inferred from this statement that he was not an addict. We are of the opinion that the trial court erred in making such a finding. Section 10 of the Dangerous Drug Abuse Act, as of the time of Banks' sentencing hearing, required that the expertise of the Department of Mental Health be employed in making that determination.

■ The State argues that the trial court was not required to consider the alternative provided by the Dangerous Drug Abuse Act because Banks was not eligible for probationary treatment under section 8 (Ill. Rev. Stat. 1979, ch. 91½, par. 120.8) because other criminal

proceedings alleging commission of a felony were pending against him at the time of the hearing on his petition. The State's argument is based upon a complaint then pending that alleged that Banks committed the offense of theft which was later stricken from the docket. According to the State, since the record on appeal shows that Banks had previously been twice convicted of theft, the theft charge pending against him alleged commission of a felony, because "[a] second or subsequent offense [of theft] after a conviction of any type of theft *** is a Class 4 felony." (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e).) We find that the complaint here referred to was not sufficient to allege the commission of a felony. The complaint is specifically labelled "misdemeanor." Further, section 111—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—2(a)) provides that "[a]ll prosecutions of felonies shall be by information or by indictment." A complaint therefore could not charge defendant with the commission of a felony.[2]

Secondly, the State contends that Banks was not eligible because he had been convicted of an unrelated burglary in 1977. The State relies on Public Act 81—851, which amended section 10 of the Dangerous Drug Abuse Act to superimpose the probation eligibility requirements of the Unified Code of Corrections. (*People v. Cain* (1982), 106 Ill. App. 3d 409, 410—11, 436 N.E.2d 32; *People v. Andrews* (1981), 95 Ill. App. 3d 595, 600, 420 N.E.2d 509.) Section 5—5—3(2)(F) of the Corrections Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(2)(F)) provides that "(2) A period of probation *** shall not be imposed for *** (F) A Class 2 or greater felony if the offender had been convicted of a Class 2 or greater felony within ten years of the date on which he committed the offense for which he is being sentenced."

■ Burglary is a Class 2 felony. (Ill. Rev. Stat. 1979, ch. 38, par.

---

[2]Banks argued that the complaint did not allege the commission of a felony because it was labelled "misdemeanor" and because the complaint did not allege prior convictions of theft or a theft over $150. In *People v. Ramey* (1974), 22 Ill. App. 3d 916, 317 N.E.2d 143, a defendant had been convicted a second time for theft, and the court held that the defendant should be resentenced as if there had been only one conviction. The court relied on the rule that a court may not impose an enhanced penalty for a successive conviction unless the prior conviction is alleged in the indictment and proved. (22 Ill. App. 3d 916, 921.) This rule was apparently eviscerated in the recent supreme court case of *People v. Hayes* (1981), 87 Ill. 2d 95, 429 N.E.2d 490. There the court stated:

"We do not, however, find any sound reason to hold that because the prior conviction elevates the degree of the offense from a misdemeanor to a felony it should be necessary, at the risk of prejudice to the accused, that it be alleged in the information and proved." 87 Ill. 2d 95, 98.

19—1(b).) Banks testified at his sentencing hearing that he was convicted of an unrelated burglary in 1977. If this is a fact, then he would have been ineligible for treatment under the Dangerous Drug Abuse Act, as amended by Public Act 81—851. We do not from this record find that he was so convicted. The trial court did not deny his petition on this basis. The presentence investigation report which is part of the record makes no reference to a prior burglary conviction. It does show he was charged with theft in 1977 and sentenced for that offense in February 1978. It is likely that Banks was referring to this theft conviction when he said he was convicted of burglary. The prosecution relied on his two prior convictions of theft as aggravating factors, but did not rely on a prior burglary conviction. Therefore, since the trial court did not find Banks ineligible because of this alleged burglary, we conclude that the proper solution is to remand this cause to determine whether there was a prior burglary conviction rendering Banks ineligible.[3] If not, an examination should be ordered.

Accordingly, the convictions of defendants Beasley and Banks are affirmed. The sentence of Banks is vacated, and the cause is remanded for a new sentencing hearing for him.

Affirmed in part; vacated in part.

McNAMARA and RIZZI, JJ., concur.

---

[3]We note that if Banks had elected to be sentenced under section 10, as it read prior to Public Act 81—851, then the probation requirements of the Unified Code of Corrections would not have been applicable. (*People v. Teschner* (1980), 81 Ill. 2d 187, 194, 407 N.E.2d 49; *People v. Andrews* (1981), 95 Ill. App. 3d 595, 600, 420 N.E.2d 509.) Furthermore, we note that section 10 was amended by Public Act 82—519, effective January 1, 1982, and that that amendment deleted the reference in the second paragraph of that section to section 5—6—1(a) of the Unified Code of Corrections.