THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY STRANGE *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 82—2692

Opinion filed June 19, 1984.

Steven Clark and Scott Graham, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Mark L. Lefevour, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendants Howard Moody and Timothy Strange, found guilty by a jury of burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—1), were sentenced to seven-year terms. Defendants appeal, raising as issues whether the circuit court erred by: (1) permitting impeachment of Strange; (2) permitting instances of prosecutorial misconduct; (3) failing at sentencing to consider the alternative disposition available to drug abusers; and, (4) imposing excessive sentences.

At trial, the State's evidence revealed that in the early morning

of May 24, 1982, St. Marthal Missionary Baptist Church was reported to have been burglarized. A boarded-up basement window was broken and the candy counter in the basement kitchen area ransacked. Nothing was missing.

Chicago police officers arrived at the church at about 2:50 a.m. on May 24, shortly after receiving a report of a burglary in progress. A window on the side of the building was missing. One officer using a flashlight looked into the building, noticed a shadow moving, went to the rear of the building while his partner remained at the window, and placed Moody under arrest when he exited the rear door. Other officers had by then arrived at the scene. At the front of the church, officers saw another person, identified as Strange, who also was arrested. The basement kitchen area was in disarray; utensils were on the floor and drawers and cabinets were open. Defendants had no weapons, burglary tools, or items belonging to the church in their possession.

Strange testified for the defense. He and Moody took public transportation to 47th Street and were walking toward Strange's home, located one block from the subject church, in the early morning of May 24, 1982. As they approached, he observed three persons entering the church. Viewing these "manifestations of criminal activity," he and Moody stopped and formulated a plan to catch the intruders, and entered the church through the rear door, which was "wide open and propped." Moody went to the front of the building and Strange stayed behind, but they lost contact with each other in the darkness. Strange went downstairs and noticed that the drawers and cabinets were open. They were inside about 5 to 10 minutes when the police arrived. Strange told the arresting officers that there may be some "kids" nearby, but the police failed to look for anyone else.

I

■ Defendants contend that they were denied a fair trial when the State was improperly permitted to impeach Strange with evidence of a prior conviction. The instant trial began on October 13,1982. After Strange testified, the State introduced a certified copy of his April 21, 1970, Michigan conviction for breaking and entering. Although conceding that this copy did not reflect the date of his release from custody, the prosecutor told the court that Strange was released in September 1973. The court examined the document and, noting that the minimum sentence for the offense was three years, stated "so he could not do less than the three, right, which would put him within the ten years." Strange's counsel objected, asserting that Strange

was released in 1972 because of "good time," whereupon the court ruled, "I will permit you to use it on its face." The admission of Strange's 1970 conviction, based upon the prosecutor's unsupported and contradicted statement and the presumption that Strange must have served the minimum sentence, was erroneous. (*People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283.) The State, in seeking to impeach Strange, was obligated to present proper evidence of the previous conviction and release date. Having failed to do so requires reversal and remandment for a new trial.

## II

■ Defendants next argue that they were denied a fair trial by certain prejudicial remarks made by the prosecutor in closing argument and during the cross-examination of Strange. Strange's motion for a new trial failed to refer to any such remarks; therefore, unless the remarks constitute plain error, the objections to them were waived. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091.) Moody assigned error in his post-trial motion only to "prejudicial inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury," which is insufficient to preserve specific remarks for review, absent plain error. (*People v. Turk* (1981), 101 Ill. App. 3d 522, 530, 428 N.E.2d 510; *People v. Bell* (1975), 27 Ill. App. 3d 171, 176, 326 N.E.2d 507.) Certain comments, claimed to have been objectionable, were within permissible boundaries; however, several of the remarks complained of were of such prejudicial magnitude as to have deprived defendants of a fair trial. (87 Ill. 2d R. 615(a); *People v. Lucas* (1981), 88 Ill. 2d 245, 251.) We limit our analysis to the latter.

■ The prosecutor called Strange a "liar" and said he wished the jury had "a built-in shockproof B.S. detector" with which to evaluate Strange's testimony. A defendant can be called a "liar" in argument, provided evidence of lying exists or reasonable inferences of lying can be drawn from the evidence. (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 721, 431 N.E.2d 1154; *People v. Dowd* (1981), 101 Ill. App. 3d 830, 848, 428 N.E.2d 894.) Here, Strange's testimony was not inconsistent with that of any other witnesses. Argument which charges a defendant with lying, which has no basis in the record, may be severely prejudicial (*People v. Weathers* (1975), 62 Ill. 2d 114, 117-21, 338 N.E.2d 880), and is entirely improper. *People v. Emerson* (1983), 97 Ill. 2d 487, 497-98, 455 N.E.2d 41; *People v. Starks* (1983), 116 Ill. App. 3d 384, 390-91, 451 N.E.2d 1298, *appeal denied* (1984), 96 Ill. 2d 548.

■ Defendants also argue that prejudice resulted when the State asked Strange on cross-examination whether he had ever used any other name but subsequently failed to present evidence that Strange had in fact used another name. This abortive and bad-faith attempt at impeachment, defendants contend, was only designed to disparage Strange's character by innuendo. (*People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353.) Although, as the State correctly maintains, the fact that Strange may have used an alias was only collateral to the issues in the case, the question was nevertheless improper since it could suggest to the jury that Strange had reason to use an alias and was therefore not worthy of belief. (See *People v. Fiorita* (1930), 339 Ill. 78, 88, 170 N.E. 690; *People v. Scaggs* (1982), 111 Ill. App. 3d 633, 636, 444 N.E.2d 674.) Evidence which has no tendency to prove an issue at trial and serves only to persuade a jury that the defendant is a bad or evil person and therefore likely to have committed the crime charged has been repeatedly and consistently condemned. (*People v. Lewis* (1924), 313 Ill. 312, 319, 145 N.E. 149; *People v. Starks* (1983), 116 Ill. App. 3d 384, 390-91; *People v. Scaggs* (1982), 111 Ill. App. 3d 633, 636.) Defendants' case hinged entirely on Strange's credibility. The State's failure to rebut Strange's negative response to the challenged question amounted to plain error. *People v. Morris* (1979), 79 Ill. App. 3d 318, 330, 398 N.E.2d 38.

We cannot say that the cumulative effect of the foregoing remarks did not contribute to defendants' convictions. (*People v. Weathers* (1975), 62 Ill. 2d 114.) Clearly, they denied defendants a fair trial. (*People v. Scaggs* (1982), 111 Ill. App. 3d 633, 637; *People v. Patterson* (1976), 44 Ill. App. 3d 894, 900, 358 N.E.2d 1164.) Accordingly, this case must be reversed and remanded for a new trial for these reasons as well.

## III

Since there must be a new trial in this case, we will consider certain alleged sentencing errors identified by defendants. They maintain that the circuit court erred by failing to advise them at sentencing of possible alternative dispositions under the Dangerous Drug Abuse Act (Act). (Ill. Rev. Stat. 1981, ch. 91½, par. 120.1 *et seq.*) Section 10 of the Act provides that if the court has "reason to believe" a convicted defendant is an addict or if defendant states he is an addict, "*** the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a licensed program designated by the Commission." (Ill. Rev. Stat. 1981, ch. 91½, par. 120.10.) A defendant is not eligible to make such election,

however, if barred by the exclusions enumerated in section 8 of the Act. Ill. Rev. Stat. 1981, ch. 91½, par. 120.8.

■ Once a court has "reason to believe" an otherwise eligible defendant is an addict, the court must advise him of his option to elect treatment. (*People v. Beasley* (1982), 109 Ill. App. 3d 446, 453, 440 N.E.2d 961; *People v. Chaput* (1981), 100 Ill. App. 3d 982, 984, 427 N.E.2d 595.) In general, "little should be required to give a court reason to believe defendant is an addict." (*People v. Beasley* (1982), 109 Ill. App. 3d 446, 454.) Facts in a presentence report are enough to suggest a "reason to believe." (*People v. Melson* (1976), 36 Ill. App. 3d 71, 73-74, 343 N.E.2d 258; *People v. Davis* (1981), 95 Ill. App. 3d 1097, 1098, 420 N.E.2d 1035.) A reviewing court may examine the facts to determine the existence of a "reason to believe," even where the trial court made no such determination, as here. *People v. Beasley* (1982), 109 Ill. App. 3d 446, 454.

None of the section 8 exclusions applied to Strange; he was otherwise eligible to be advised of his election under the Act. His presentence report noted a 20-year history of heroin use, the use of "Ts and Blues" from 1978 until his incarceration, and a recommendation for treatment in a drug abuse program. At sentencing, Strange requested to be "paroled" to the T.A.S.C. (Treatment Alternatives to Street Crime) program. His counsel, moreover, noted the presence in court of a T.A.S.C. representative. These facts reasonably suggest that the circuit court should have found "reason to believe" Strange to be an addict. The court, however, instead of advising him of his election, noted his presentence report and his request for treatment and said a drug program would not be "appropriate." Strange was then sentenced to seven years' imprisonment.

The State argues, without citation of authority, that the court properly exercised its discretion in determining that Strange was not an "addict" and not eligible to elect the treatment alternative because section 10 refers to an "individual convicted of a crime," while section 8 refers to an "addict." The State concludes from this choice of words that a sentencing court has discretion to determine whether a defendant is an addict *before* the alternative disposition is considered; and such discretion serves to eliminate meritless claims of addiction. The State's argument must be rejected.

■ Section 10, entirely consistent in its use of terms, provides that once a court has "reason to believe" defendant to be an addict, it has no initial discretion to reject the alternative disposition. Under section 10, the court "shall" advise an "individual" whom it has reason to believe is an "addict" that he has an election, and must also

order an examination by a licensed program of the "individual" who then elects treatment; only after the licensed program reports to the court does the court determine whether "such an individual is an addict" and whether, in light of defendant's history and character and the circumstances of the offense, the treatment alternative should be ordered. If the court decides to sentence defendant to imprisonment, it must specify "on the record the particular evidence, information or other reasons that led to such opinion." (Ill. Rev. Stat. 1981, ch. 91½, par. 120.10.) The circuit court's rejection of Strange's request for treatment, therefore, in the face of sufficient grounds to believe him eligible, was a premature exercise of discretion contrary to the express terms of section 10. By neither advising Strange of his election nor ordering his examination by a licensed agency, the circuit court deprived him of his statutory right to have the court consider the licensed program's report before rendering its disposition.

As for Moody, the record contains sufficient indication that there was "reason to believe" that he, too, was an addict. Moody's presentence report indicated that he had admitted to heroin use for the past four to five years, but noted that he had never participated in a drug treatment program. The report also observed that he had been given a five-year sentence for armed robbery in 1978, from which the inference could be drawn that at the time of trial, in 1982, he was still on parole or probation. The State also advised the court of this conviction at sentencing. There was, however, no explicit indication that Moody was, in fact, a parolee or probationer, which would have made him expressly ineligible under section 8(e) of the Act to make the election for alternative sentencing, unless he made an affirmative showing that he had obtained consent to the treatment alternative from the appropriate parole or probation authority. Ill. Rev. Stat. 1981, ch. 91½, par. 120.8(e); *People v. Blair* (1981), 102 Ill. App. 3d 1018, 1025, 429 N.E.2d 1375.

In sentencing Moody, the circuit court did not state whether it had considered an alternative disposition under the Act, but only noted that probation was inappropriate in view of Moody's past criminal history. The use of the ambiguous term "probation" makes it unclear whether the Act had been taken into consideration. (See *People v. Teschner* (1980), 81 Ill. 2d 187, 193, 407 N.E.2d 49.) Because there was sufficient "reason to believe" Moody an addict, and in the absence of direct proof that he was on parole or probation, the circuit court was obliged at least to inquire into Moody's eligibility under section 8.

50

For the aforesaid reasons, this cause must be reversed and remanded for a new trial.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.