THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUSSELL J. LUCAS, Defendant-Appellant.

Fourth District   No. 15889

Opinion filed June 6, 1980.

TRAPP, J., concurring in part and dissenting in part.

Richard J. Wilson and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

Ken Boyle, State's Attorney, of Carlinville (Gary J. Anderson and Darryl D. Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Macoupin County, defendant, Russell Lucas, was, on October 17, 1979, convicted of aggravated battery occurring on June 16, 1979. He was then sentenced to an extended term of 6 years' imprisonment. On appeal he asserts (1) the Illinois provision for extended term imprisonment (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1)) is unconstitutional and his sentence is, therefore, improper, (2) closing argument comment by the State on his in-custody silence was reversible error, and (3) the court erred in admitting hearsay testimony of a statement made by the victim.

In view of our disposition of this case it is not essential that we pass upon the constitutionality of defendant's sentence. However, we note that in a recent case we upheld the constitutionality of the extended-term provision against virtually identical claims that it violates equal protection guarantees. (*People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318.) We see no reason to reconsider our position on this point.

The case arose from a brawl in a tavern in Carlinville. Larry Bowman testified that he was standing at the bar when defendant, whom he had not known before that evening, came over and asked him if he would get defendant a drink. Bowman testified that he would not and then looked away and heard glass breaking. He said that he was then knocked to the floor by Lucas and the next thing he remembered, he was holding his head with a towel. Bowman also testified that he did not see anything in defendant's hand and did not see defendant swing at him. Russell Scott testified to hearing glass break and when he turned around he saw Bowman on the floor with defendant bent over him. Scott said he pulled defendant off and then defendant punched him. Pamela Davis testified that upon hearing something break she turned and saw defendant hitting Bowman but that defendant had nothing in his hand at that time. A waitress testified that Bowman had been acting intoxicated earlier that evening, and she refused him further service.

Phil Maguire, testifying for defendant, related the following version of the occurrence. Bowman had bothered two women who were with defendant, whereupon defendant came to Bowman and told Bowman to

leave them alone. Bowman then told defendant that it was none of defendant's business and pushed defendant in the chest whereupon defendant hit Bowman. Maguire was impeached by a witness who testified that at the time of the incident Maguire had told him to stay out of the fight because they did not know who had started it.

■■ Evidence showed that shortly after the event, defendant was found by a police officer at another bar. The officer asked defendant to accompany him to the police station for questioning but defendant refused to go until he had finished a drink. According to the officer, he then "insisted" that defendant come immediately and defendant acceded to the demand. At the station, the officer asked defendant how he had received the cut on his hand and defendant responded that he had cut it on the back of a motorcycle as he went over some railroad tracks. The record does not indicate that defendant was free to leave at this time.

In closing argument the State's Attorney said:

"Look at Mr. Lucas when he was picked up or finally questioned by the Carlinville Police Department. You didn't hear any story about at that time about, well, this other guy started it or anything like that. He never told him anything about that. Only thing he told the police officer was a darn smart aleck, showed him his blood. That's all he did. He didn't say any time other guy started it or anything like that. He just wanted to get out of there. Where did the blood come from all over him? Convenience of the railroad track and cut his hand and it was all over him. Also, what he told the police officer."

In the context of the disputed state of the evidence we examine the question of whether the prosecutor's comments were plain error. (73 Ill. 2d R. 615(a).) It is a well-settled principle of law that post-arrest silence is insolubly ambiguous and that it is error to bring defendant's post-arrest silence to the attention of the jury. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632.) When such an error does occur an appellate court may affirm only if it is convinced beyond a reasonable doubt that the error did not contribute to defendant's conviction. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

The only possible exception to this rule occurs when a defendant is not completely silent, but rather chooses to give some type of statement to police concerning his relation to the incident giving rise to the charge. Under such circumstances it would be assumed that defendant would give a complete statement in his efforts to exculpate himself. In such a situation it is proper for the prosecutor to draw to the jury's attention the fact that defendant said nothing earlier about certain additional details

which are offered only at trial. *People v. Henson* (1978), 58 Ill. App. 3d 42, 373 N.E.2d 852.

■■ Although the jury could believe from the evidence that defendant cut his hand in hitting Bowman, the question he was asked with reference to his hand was not directed to the occurrence at the bar. No assumption would arise that if defendant had actually hit Bowman in self-defense, he would have so stated to the police when they asked him about his hand. No other statement or conduct of defendant would have opened the door and justified the prosecutor's comment as to his silence. The argument was plain error. It was not waived when, in answer argument defense counsel also referred to the testimony that defendant had blood on his hands. Because of the dispute in the evidence we cannot say that it was harmless beyond a reasonable doubt. Accordingly, we reverse and remand for a new trial.

We consider the final issue because it is likely to arise on retrial.

Alex Fones, a Carlinville police officer, testified upon answering a call to the tavern, he found Bowman behind the bar wiping "quite a bit of blood" off his face and acting rather scared. Fones was permitted to testify, over a hearsay objection, that when he asked Bowman what had happened, Bowman responded that "somebody cut him with a glass." At trial Bowman stated that he did not remember defendant hitting him with glass nor did he remember making the statement to Fones. As none of the several witnesses to the fight testified to having seen anything in defendant's hand, this hearsay testimony was the strongest evidence that defendant had hit or cut Bowman with glass.

The trial court admitted the evidence under the spontaneous declaration (or as it is often called, the excited utterance) exception to the hearsay rule. This rule is based upon the premise that without time for reasoned reflection a declarant cannot fabricate his story to that which is in his interest. As a result the statement is likely to be particularly trustworthy and may be received as evidence. As the supreme court has stated:

> "Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.

In *Poland* testimony was admitted over a hearsay objection that during the nighttime and after shots were heard coming from the defendant's house, the defendant's mother ran to the house of a neighbor and screamed that defendant had shot his wife and said he was going to shoot himself and their children. The supreme court held the evidence to have been properly admitted even though the mother's utterance did not

take place exactly at the time and place of the startling event. Under the circumstances the mother had no opportunity for reflection and invention. The latter was deemed to be the crucial test.

In contrast admission of a victim's identification of an alleged rapist 3½ hours after the crime was held to be error, although not reversible under the circumstances, in *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164. Nonetheless, mere lapse of time is not controlling, for as this court has stated:

> "The time which has elapsed since the event, and the distance which the declarant has traveled * * * is material in determining * * * spontaneity, but neither mere distance nor time are in themselves controlling. The court must determine whether under all the surrounding circumstances it is reasonable to believe that the declarant acted without thought * * *." (*People v. Parisie* (1972), 5 Ill. App. 3d 1009, 1029, 287 N.E.2d 310, 321.)

In *Parisie* the amount of time which had elapsed between the time the victim was fatally shot and the arrival of police was unknown. Nonetheless the surrounding circumstances showed the victim to be covered with blood and laying along the roadside in great pain and suffering from a state of shock. Because of this we ruled that neither the opportunity nor probability of fabrication was present and the victim's statements would be properly admitted.

Thus, where the time between the startling event and the utterance is fairly short as in *Poland* there is less need to fully analyze all of the surrounding circumstances. Where the time is quite long as in *Robinson* surrounding circumstances are seldom, if ever, enough to allow the admission of the hearsay. The case at bar like *Parisie* falls between the two extremes. On retrial it would be desirable to have more information both as to the time lag between the fight and Bowman's utterance and as to Bowman's intervening activity. This would enable the court to better determine whether at the time of making the declaration Bowman was still under the shock of the event so that the event was speaking through him rather than he reflecting on the event. We do not determine whether the admission of the evidence at the instant trial was proper.

For the reasons stated, we reverse and remand for a new trial.

Reversed and remanded for a new trial.

MILLS, P. J., concurs.

Mr. JUSTICE TRAPP, concurring in part and dissenting in part:

I must dissent from that portion of the opinion which concludes that there was plain error arising in the quoted argument by the State's Attorney.

138

The record does not support the determination that there was plain error or that there was, in fact, comment upon defendant's silence. The portion of the State's Attorney's argument at issue was a largely incoherent comment upon statements made in conversations essentially initiated by defendant.

The record discloses that the matter was in the investigatory stage. Defendant was the last of several persons interviewed at the police station as an inquiry into the events. All other persons had been released or sent away. No arrest was made until Bowman was brought back from the hospital for interview upon the events and to identify the defendant. Bowman signed a complaint against defendant.

The portion of the argument at issue had a foundation in the testimony of a police officer to which no objection was made. That officer was requested to bring defendant from a nearby bar to the police station and was sitting with the defendant while the latter was waiting to be interviewed. The record does not disclose that any *Miranda* admonitions had been given to the defendant. The officer described the hands and clothing of defendant as being bloody and stated that as they were waiting, defendant was licking blood from cuts on his hands. Defendant inquired of the officer whether the sight made the officer ill and, when told that it did not, further inquired if the officer would like to lick the cuts also. Incident to such conversation, the officer inquired as to the cause of the injuries of his hand and was then told about receiving the cuts as defendant's motorcycle crossed the railroad tracks.

If defendant had testified to some other origin of the wounds the evidence would have been the subject of impeaching cross-examination as an inconsistent statement. (*People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39; *People v. Henson* (1978), 58 Ill. App. 3d 42, 373 N.E.2d 852.) On the other hand, if the defendant had testified, that explanation might have been consistent with the testimony.

Here, there was no objection to either the testimony concerning the source of the blood on defendant's person or clothing, or to the argument made at trial. In defendant's argument following that of the State's Attorney, defendant chose to discuss the testimony and argue that no other witness at the scene had testified to observing blood on defendant's hands or clothing. In effect, defendant chose to use the testimony as a sword. This is not plain error.

One finds no factual relationship which brings this case within the rule of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064, and *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632.

I would affirm the conviction.