(No. 53753.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RUSSELL J. LUCAS, Appellee.

*Opinion filed December 18, 1981.*

CLARK, J., specially concurring.

Tyrone C. Fahner, Attorney General, of Springfield, and Kenneth Boyle, State's Attorney, of Carlinville (Melbourne A. Noel, Jr., and Cathy Ann Pilkington, Assistant Attorneys General, of Chicago and Gary J. Anderson and Darryl D. Pratscher, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Janet Sinder, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE WARD delivered the opinion of the court:

After a jury trial in the circuit court of Macoupin County, Russell Lucas was convicted of aggravated battery. His motions for judgment notwithstanding the verdict and for a new trial were denied, and he was sentenced to an extended term of six years with a one-year mandatory supervised-release provision under section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2). The appellate court, with one justice dissenting, reversed and remanded for a new trial. (85 Ill. App. 3d 133.) We granted the People's petition for leave to appeal.

Early in the morning of June 16, 1979, Larry Bowman was attacked in a crowded tavern in Carlinville. He suffered severe and multiple facial lacerations that required sutures under his nostril and lip and on his cheek and neck. It appears that he was left with a scar from the area of his right eye to his neck. Bowman testified that the defendant approached him at the bar and asked if he would buy the defendant a drink, which Bowman declined to do because Bowman had been "shut off" earlier. Bowman stated that he looked away and then heard glass breaking. He testified that he turned in the direction of the sound and was struck with a glass by the defendant and knocked to the floor. Bowman, however, said he did not actually see the defendant swing at him, nor did he see a glass in the defendant's hand before or after the incident. There was no direct testimony that a broken glass was in the defendant's hand. A broken glass with jagged edges was later found on the floor, but it was thrown away by a bartender.

Paul Scott, a bartender who was off duty at the time of the incident, testified that he heard glass breaking and that he saw the defendant without visible provocation strike Bowman. He said Bowman was knocked to the floor and did not fight back. Scott testified that the defendant then bent and stood over Bowman and that he could see the

defendant's right arm moving but could not see what he was doing. Pamela Davis, a sister of Alex Fones, a Carlinville police officer who was a prosecution witness, testified that she and her husband were at the end of the bar where the incident occurred. When she first noticed Bowman and Lucas, the defendant was striking Bowman, who fell to the floor and lay there motionless. The witness testified that she had not seen anything in the defendant's hand. She testified that Bowman "was bleeding very bad. His whole side of his face was cut and he was just covered with blood." Scott said that while he was trying to pull the defendant off Bowman, the defendant tried to punch Scott, wrestled with him, and exclaimed "I ain't after you."

The defendant did not take the stand. The only defense witness, Phil Maguire, testified that Bowman was annoying two women patrons and that the defendant, saying the women were with him, asked Bowman to leave them alone. He said that Bowman said it was none of the defendant's business and poked the defendant in the chest with his finger and appeared to begin to push him. The defendant hit Bowman with his fist, Maguire said, and both men fell to the floor. The witness said he didn't notice any blood on the defendant when he left the tavern. Maguire's testimony, however, was contradicted by that of Mark Boatman. Although Boatman was sitting at the same table as Maguire and was closer to the defendant and Bowman than Maguire, he was unable to hear any of the conversation between the defendant and Bowman. There was testimony that the tavern was very crowded and that there was noise and "loud music." Boatman's testimony continued:

"Q. At this point then was anything said between you and Phil Maguire about the incident?

A. Yes, I said something to him, you know.

Q. You said something to him?

A. Something about, well, helping them guys or

something and he said it—said wasn't none of our business and just stay out of it.

Q. Did he say anything else about who started it?

A. Uh—he didn't know what started it or anything, so we—he said just stay out of the way."

Shortly after the incident, the defendant was located in another tavern by police officer Fones. He accompanied the officer to the police station only when the officer insisted. Fones testified that when he saw the defendant in the tavern his hands and his clothing were covered with blood. While waiting in the police station, apparently to be interviewed by another policeman, the defendant was sitting and licking a cut on his hand. He asked Officer Fones if it was making him sick and asked him if he wanted to lick the cut. Fones said that he asked the defendant how his hand had been cut and he said "it happened on his plate on the back of his motorcycle as they crossed the railroad track." The defendant was formally placed under arrest after he had been questioned by the police and identified by Bowman as his attacker.

Based on Maguire's testimony the defense attorney argued at trial that the defendant had acted in self-defense and, in any event, was not guilty of aggravated battery since the record did not show that he had struck Bowman with a glass.

During closing argument the prosecutor, in the transcript's remarkably incoherent version, said:

"Look at Mr. Lucas when he was picked up or finally questioned by the Carlinville Police Department. You didn't hear any story about at that time about, well, this other guy started it or anything like that. He never told him anything about that. Only thing he told the police officer was a darn smart aleck, showed him his blood. That's all he did. He didn't say any time other guy started it or anything like that. He just wanted to get out of there. Where did the blood

come from all over him? Convenience of the railroad track .and cut his hand and it was all over him. Also, what he told the police officers. There seems to be an excuse for everything that has been presented and he asked or has to come up with something, I suppose."

The statement was not objected to during the argument, nor was it claimed to be error in the defendant's post-trial motion for judgment notwithstanding the verdict or for a new trial. Rather, in closing argument the defendant argued that Fones was the only witness who had testified that the defendant had had blood on his hands and clothing.

It is clear that, when a defendant fails to make timely objections at trial and in the post-trial motion, any error in closing argument is considered waived. (*People v. Jackson* (1981), 84 Ill. 2d 350.) A failure to raise an issue in a post-trial motion following a jury trial constitutes a waiver of that issue, and it cannot be urged as a ground for reversal on review. Supreme Court Rule 615(a), however, provides an exception to this rule of waiver where there has been "plain error." The rule reads in part:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (73 Ill. 2d R. 615(a).)

That plain error may be noticed, though not objected to at trial or in a post-trial motion, is illustrated by this court's decision in *People v. Carlson* (1980), 79 Ill. 2d 564, 577:

"The failure of counsel to object at trial waives those errors which the court can correct by sustaining an objection and admonishing the jury. Otherwise, counsel, by not giving the court the opportunity to prevent or correct error at trial, will gain the advantage of obtaining a reversal through his own failure to act, either intentionally or inadvertently. Whether or not the erroneous evidence or remarks were objected to at the trial, a court of review will grant relief if the trial error is so prejudicial that real justice has been denied

or the verdict of the jury may have resulted from such error."

The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *People v. Jackson* (1981), 84 Ill. 2d 350; *People v. Carlson* (1980), 79 Ill. 2d 564; *People v. Pickett* (1973), 54 Ill. 2d 280.

We consider that the appellate court erred in holding that the prosecutor's comments constituted plain error. The defendant, through the testimony of Maguire, raised the question of self-defense. When the defendant told Officer Fones that he had cut himself on his motorcycle, he was not making any claim of self-defense. The appellate court considered that the remarks of the prosecutor in closing argument, which we quoted earlier, were a comment on the defendant's silence as to his defense of self-defense and that this was plain error.

The People contend that the circumstances here do not fall within the ambit of the prohibition against comment on the silence of an accused under *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and related decisions. The People contend that in fact there was not a comment on silence and that the prosecutor's remarks were a comment on statements made in a conversation that basically was prompted or initiated by the defendant.

We need not determine whether or not under the circumstances there was an improper comment on silence, as we do not judge that the plain error rule can be invoked. The evidence was not closely balanced. It is not disputed that the defendant struck Bowman and injured him severely. At least two of the witnesses for the prosecution testified that Bowman did not provoke the attack, that he did not fight back, that there was the sound of broken glass, and that a broken glass with jagged edges was later found on the

floor in the tavern. The defendant's self-defense claim was raised through the testimony of one witness, whose testimony was significantly contradicted by his own companion who had been sitting at his table. Boatman said that Maguire told him that he did not know who had begun the fight. Maguire had testified to hearing conversation between the victim and the defendant. The tavern was crowded and noisy, and Boatman said he could not hear any conversation between the victim and the defendant.

Looking to the other ground for invoking the doctrine of plain error, we consider that in any event there was not error of such magnitude as to clearly deny the defendant a fair trial.

For the reasons given, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CLARK, specially concurring:

The prosecution witnesses, the circumstantial evidence and the effective rebuttal of the one defense witness support the majority conclusion that the evidence was not closely balanced. I concur. But I feel we should examine the alleged mistake in determining whether error occurred, before asking whether it rose to the level of plain error.

The majority notes that "[t]he People contend that the circumstances here do not fall within the ambit of the prohibition against comment on the silence of an accused under *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and related decisions." (88 Ill. 2d at 251.) I believe it is clear that the State's Attorney's remarks do fall within the ambit of *Doyle* and its progeny, and such remarks are prohibited. In closing arguments the State's Attorney said: "You didn't hear any story about at that time about, well, this other guy started it or anything like that. He

[the defendant] never told him [the police officer] anything about that. \*\*\* He didn't say \*\*\* anything like that.\*\*\*." Those words are unmistakable remarks about the defendant's silence; as such they unquestionably constitute error.

In *Doyle v. Ohio* the supreme court recognized that "\*\*\* it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (426 U.S. 610, 618, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245.) This court expressed agreement with the rationale of the *Doyle* majority in *People v. Beller* (1979), 74 Ill. 2d 514. We hold that the *Doyle* rule applied, even absent any evidence that the defendant had been given *Miranda* warnings. We said:

> "Since every arrested person has the right to remain silent and may be aware of his right even in the absence of *Miranda* warnings, post-arrest silence remains 'insolubly ambiguous.'" (74 Ill. 2d 514, 521.)

The *Miranda* warnings provide a means by which an accused is aware of certain rights he possesses. They "do not confer rights on a defendant." (74 Ill. 2d 514, 521.) The critical juncture is the arrest when the defendant is taken into custody and not the police officer's reading of the *Miranda* warning.

Recently the United States Supreme Court in *Jenkins v. Anderson* (1981), 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124, held that pre-arrest silence was a proper subject for cross-examination of a suspect at trial. The State contends that the *Anderson* decision should control the outcome of this case. In *Jenkins v. Anderson* the prosecutor did not comment upon the silence of the defendant following the arrest, but upon the fact that the defendant had waited two weeks to surrender and had not come forward with the self defense claim posited at trial. The supreme court then held that "impeachment by use of *prearrest* silence does not violate the Fourteenth Amendment." (Emphasis added.)

(447 U.S. 231, 240, 65 L. Ed. 2d 86, 96, 100 S. Ct. 2124, 2130.) *Anderson* does not apply to this case. Prior to an arrest there is no need to assert one's right to remain silent. The occasion for its assertion does not arise until one is taken into custody by officers of the State.

The defendant here did not testify at trial. The prosecutor's remarks on the defendant's failure to tell the police of his self-defense claim cannot be construed as impeachment with a prior inconsistent statement. The defendant's silence was used as substantive evidence from which the prosecution implied that the defendant cut his hand in the altercation at the bar and not on his motorcycle. It is agreed upon that the defendant's nonassertion of his self-defense claim came after his arrest. The defendant was in custody. I feel it is important to reemphasize our adherence to the holding of *People v. Beller* (1979), 74 Ill. 2d 514, that prosecutorial remarks about an accused post-arrest silence are impermissible. (74 Ill. 2d 514, 521.) The defendant may well be aware of his right to remain silent. It is unfair to deprive him of asserting that right because he knew of it without being informed. To limit *Doyle v. Ohio* to instances where the *Miranda* warnings are given "could eviscerate *Doyle* through the simple expedient of not reading *Miranda* warnings at the time of arrest." *Weir v. Fletcher* (6th Cir. 1981), 658 F.2d 1126, 1132 (the prosecutor's comments to the jury concerning the defendant's silence following his arrest but prior to the reading of *Miranda* warnings violated the defendant's fifth amendment rights).

I believe the complained-of comments constitute error. I agree, however, that the error does not rise to the level of plain error. We consider plain error in two circumstances: where the error is so fundamental that it impugns the integrity of the judicial process, and where substantial injustice would be done to the defendant in the case. *People v. Baynes* (1981), 88 Ill. 2d 225, 230-31; *People v.*

*Green* (1979), 74 Ill. 2d 444, 453 (Ryan, J., specially concurring).

In the former instance it is not necessary to weigh the evidence. Those errors are so basic that they require reversal regardless of the evidence aligned against the defendant. In the latter instance it becomes necessary to weigh the evidence only after an initial inquiry has been answered as to whether an error has been made. I think it is appropriate that the first question be asked and answered. Was there obvious error here? Yes. Was it plain error? No. The evidence was not close. Therefore, while the court does not consider the error here to be "plain error," in my opinion error did occur. It is only in weighing the evidence that we can determine if this type of error denied the accused a fair trial (*People v. Pickett* (1973), 54 Ill. 2d 280). However, the balancing should follow a preliminary examination of the prosecutor's closing remarks. I believe they constituted error but because the evidence was not close, the error did not subject this defendant to a miscarriage of justice.

I hope that this decision will not be construed as a redefining of the lines drawn in *Beller*. Every arrested person has the right to remain silent, whether *Miranda* warnings are given or not. To assure a defendant that protection and then allow impeachment of, or comments about, the assertion of that privilege is wrong. We found such actions by the State's Attorney to be error in *Beller;* I do not think that this decision should be viewed as a retreat from that position.