THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH BOLLMAN, Defendant-Appellant.

First District (2nd Division) No. 86—1517

Opinion filed November 24, 1987.

622

624

Dore & Rothschild, of Chicago (Maurice M. Dore and Edward M. Rothschild, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant appeals from his conviction and three-year sentence after a jury trial on a charge of aggravated criminal sexual abuse of a seven-year-old girl, M., in violation of section 12—16(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)).

On appeal, defendant contends that the trial court erred (1) in allowing the People to offer evidence as to defendant's previous bathing

with M. and with his own children; (2) in reserving its ruling on defendant's motion for a directed verdict of not guilty; (3) in allowing introduction of evidence of statements by M. regarding defendant's conduct with her; (4) in allowing introduction of evidence of statements by a friend of M.'s mother as to defendant's conduct with M.; (5) in allowing cross-examination of defendant as to whether he had bathed with his own children seven or eight years before the charged incident involving M.; and (6) in permitting defendant's former wife to testify in rebuttal and thereby allegedly to impeach him as to whether he had bathed with his own children. In addition, defendant contends (7) that because of these alleged errors and an allegedly improper closing argument by the People, his conviction did not rest on proof of guilt beyond a reasonable doubt, and (8) that his sentence was excessive. For the reasons set forth hereinafter, we affirm.

## FACTS

### I. PROCEDURAL HISTORY

Defendant Kenneth Bollman was arrested on November 13, 1984, and charged with criminal sexual assault upon M., who was the daughter of defendant's friend Karen. Thereafter, an information was filed, charging defendant with criminal sexual assault (count I), aggravated criminal sexual assault (count II), and aggravated criminal sexual abuse (count III). The date of the incident charged was September 29, 1984, when defendant had babysat with M. and her brother. After earlier proceedings that led to a new trial, the jury trial was held that resulted in the present appeal.

During the earlier proceedings, defendant had filed a discovery motion. Defendant also filed a motion *in limine* that sought, *inter alia*, to prevent the People from introducing evidence of any acts by defendant earlier than the incident date.

At the close of the People's case in chief, defendant moved for a directed verdict of not guilty on all counts. The court denied the motion as to counts I and II but reserved its ruling as to count III until the beginning of closing arguments. The People later entered a *nolle prosequi* as to count I; subsequently, the court denied defendant's motion as to count III.

On April 8, 1986, the jury found defendant not guilty on count II but guilty on count III. After a hearing in aggravation and mitigation, defendant was sentenced to three years' imprisonment.

## II. TRIAL TESTIMONY

**A. Of M.** At trial, M. testified as follows in regard to the charged babysitting incident: After defendant told her to join him in the bathtub during his own bath and said that he would get out in a couple of minutes, she and defendant played a game of "bouncing down" and then washed each other. She washed his stomach, legs, and penis because he told her to do so, and he washed her chest, legs, and vagina. Defendant inserted his finger into her vagina, and she complained of pain; he replied that he was washing her vagina, and he continued for a little while. His penis also touched her vagina. She and defendant were in the tub together for about 10 minutes.

Over objection, M. testified that she and defendant had previously bathed together more than four times and that at such times she and defendant had occasionally played similar games and washed each other.

Over objection, M. also testified that sometimes, while she watched television with him and her brother in her living room, defendant "would rub me by my vagina and I would rub him by his penis" as the two of them sat on the couch under a blanket. M. twice testified that she had reported the charged bathing incident to her mother on the morning afterward.

**B. Of Karen.** Karen, M.'s mother, then testified as follows: On October 27, 1984, her friend Kimmy told her that Kimmy had overheard Karen's children talking about joint bathing between defendant and M. Until Kimmy's report, Karen had been unaware of any such joint bathing, but thereafter she asked M. about it, and M. said that she had bathed with defendant but that that was all. Approximately a week later, Karen asked defendant by telephone whether he had bathed with M., and he answered yes, that he didn't believe in modesty with children. On November 10, 1984, within about a week after questioning defendant, Karen talked with Kimmy again, and Kimmy said that she had been molested as a child, that she felt there was more to the bathing incident, and that Karen should question M. more extensively. Later on the same day, Karen again asked M. about the bathing incident, and M. told her more about it.

Defense counsel objected as to each of Karen's two references to conversations with Kimmy, and after each, the court instructed the jury that the testimony was being allowed not to show the truth of what Kimmy reported but merely to show that Karen was so informed and put on notice by Kimmy. Karen also testified that, contrary to M.'s earlier testimony, M. did not report the September 29 bath on the morning afterward.

C. Of Poss and Tomaso. Investigator John Poss, of the Schaumburg police department, and Assistant State's Attorney Al Tomaso testified as to statements made by defendant during two interviews at the police station. The statements allegedly included details on previous baths and instances of fondling between defendant and M. Tomaso also testified that defendant had said that he saw nothing wrong with taking a bath with such a child, that he was merely showing his love, and that what happened was no big deal.

D. Of Defendant. Defendant then took the stand and testified as follows: Between 1980 and 1984 he occasionally babysat for Karen's children and helped Karen with household chores. He had rectal surgery in 1984, and he would soak in the bathtub to relieve postoperative pain. He took 5 to 10 baths at Karen's apartment to relieve pain while babysitting, and Karen was aware of this. While bathing, he would leave the bathroom door slightly ajar in order to monitor the children's behavior. M. walked into the bathroom a couple of times while he was bathing, and her brother did so once or twice.

On September 29, 1984, M. entered the bathtub of her own volition and without waiting for his permission. She laughed and started bouncing up and down until he ran out of air, at which time he placed her between his feet and sat up. This was the only time he had ever taken a bath with M. He never intentionally touched her vagina with his penis or any other part of his body and never had any sexual contact or motivation while in the bathtub with her. M. had not told him that he was hurting her.

On occasion, he and M. had put their arms around each other while watching television, and he may have rubbed her stomach once or twice, but he and M. had never had sexual contact at such times.

Karen had never asked him about taking baths with M., and he had never told Karen that he had done so. He did not make numerous inculpatory statements that Poss and Tomaso had attributed to him. He never had sexual contact with M., and at the time of trial he was divorced and had three teenage children of his own. He regarded the bath with M. as having been completely uneventful. In reference to bathing with M. or to not believing in modesty around children, he had told Tomaso that "there's nothing wrong with it because I raised three kids of my own."

Over objection, counsel for the People asked defendant whether he had ever bathed with his own daughter when she was seven years old, and he replied that she "might have jumped in" because his children "used to jump in once in a while" prior to age seven or eight. He stated that his daughter may have jumped into the bathtub with

him while he was nude once when she was eight, once or twice when she was seven, and three or four times when she was six. Over further objection, defendant was asked whether either of his sons had jumped into the bathtub with him when he was nude and they were eight years old. He replied that he thought one of them had done so, and that when they were six or seven, "mainly in the summertime, if they were dirty and I was in the tub before they went to bed, they just jumped right in and then I got out," which was a normal practice once in a while to save water.

F. Of Lorna. After testimony by two character witnesses for defendant, the People called defendant's former wife, Lorna, as a rebuttal witness over objection. She testified that defendant never took baths in the nude with her daughter or either of her sons when the children were six, seven, or eight years old, although she acknowledged that he might have done so when they were younger or when she had been unaware. She also stated that none of her children had ever complained to her that defendant had molested any of them sexually.

### III. CLOSING ARGUMENT

During his final closing argument and over objections, counsel for the People raised a number of points that defendant now contends exceeded the scope of defense counsel's closing argument.

### IV. SENTENCING HEARING

At the sentencing hearing, M.'s mother, Karen, testified as to M.'s behavioral changes and stomach problems after September 29, 1984, as well as counseling sessions that M. was attending.

Dr. Judith Bakshy, a psychologist, testified as to her psychological assessment of defendant. She was extensively cross-examined by counsel for the People and examined by the court.

Defendant testified as to lack of a previous arrest record, his family responsibilities, his feelings about the charged incident, his intention not to engage in similar future behavior, and his views as to a need for counseling.

After arguments by counsel on aggravation and mitigation, the sentencing judge reviewed the possible sentences. The judge considered M.'s "tender age" but noted that the legislature had considered age with regard to aggravation when classifying the crime as a Class 2 felony. The judge also reviewed the evidence of prior incidents between defendant and M. but noted that they had not been charged and it had not been determined whether they were violations of law.

"Taking all the matters into consideration," and considering the crime and its circumstances, the judge stated that probation or conditional discharge would deprecate the seriousness of defendant's conduct and would be inconsistent with the ends of justice. The judge felt that defendant's commission of the crime was not of the more heinous variety but that a minimum sentence of three years' incarceration was appropriate, which the court imposed.

Subsequently, the court denied motions for a new trial and for reconsideration of sentence; this appeal followed.

## OPINION

### I. PRIOR ACTS

Defendant contends that his pretrial discovery motion "specifically asked the People as to its potential trial use of prior acts by the defendant." In fact, defendant's motion, filed in January 1985, asked that the People disclose whether they would "rely on prior acts or convictions of a similar nature *for proof of knowledge, intent or motive.*" (Emphasis added.)

In their answer to defendant's motion, the People stated that "[t]he People intend to use certified copies of all convictions of the defendant, if any exist, for purposes of impeachment" and that "[t]he People may or may not rely on the following *prior acts* or convictions of the defendant, if any exist, *for purposes of impeachment* during the trial of this cause. The record of these convictions is available for inspection." (Emphasis added.) After this last statement, the People's answer continued: "None known at this time."

In his March 1985 motion to compel discovery, defendant did not list the request regarding prior acts or convictions as one of the sections that, as he complained, the People had not answered.

In his February 1986 motion *in limine*, defendant asserted that "the People have tendered an answer to discovery which states, *inter alia*, that they will not relie [*sic*] on prior acts of the defendant." Accordingly, he asked that the court "forbid the People from attempting to introduce any evidence of acts which might have occured [*sic*] before [September 29, 1984]."

In their response to defendant's motion *in limine*, the People asserted that defendant's own statements referred to conduct with M. on occasions prior to September 29, 1984; that M. was also prepared to testify concerning other activities between herself and defendant; and that such statements and testimony "are relevant to show the re-

lationship between the parties" and were admissible under Illinois case law.

In his March 31, 1986, argument on defendant's motion *in limine* regarding prior acts, defense counsel maintained that defendant needed an order "to prevent the Defendant from being prejudiced by attempting to introduce inadmissible evidence." Counsel also argued that the point was not whether the People had a right to show prior acts on the grounds they had urged, but that they had no such right if they had failed to disclose or denied that they were going to do so.

In reply, the People argued that they did not intend to use prior acts for impeachment but rather in their case in chief. Defense counsel responded that the People had used clever wording and trickery in answering his discovery motion. Counsel for the People then replied that the People had not directly answered in writing defendant's request for prior-acts disclosure but that he had told defense counsel in open court on February 24, 1986, as well as outside court that the People sought to introduce evidence of prior acts and that this had constituted actual notice. The People also argued that defense counsel had long ago had copies of the police reports and that there was no surprise to defendant.

On April 2, 1986, the court denied defendant's motion *in limine*, ruling that there was no prejudice to defendant from the People's failure to file an amended discovery answer in writing and that more than 30 days previously the defense was made aware of the People's intentions.

Defendant now contends that, pursuant to Supreme Court Rule 412 (107 Ill. 2d R. 412), the court should have directed the People to respond in writing "so the defense could have some idea of what it faced." He complains that not only did the People introduce M.'s testimony about prior acts of defendant in their case in chief, but they also broke their oral promise not to use prior acts for impeachment and introduced defendant's former wife's rebuttal testimony as to defendant's prior acts with his own children.

It is clear that at least by March 31, 1986, and (according to the trial court) by February 24, 1986, defendant had actual notice that the People would seek to use police reports of his own statements in regard to prior acts between him and M. and that the People would offer M.'s testimony in regard thereto. He had actual notice at least by that time as to the contents of the police reports and the outlines of M.'s proposed testimony.

■■ The purpose of Supreme Court Rule 412 (107 Ill. 2d R. 412) is to protect an accused against surprise, unfairness, and inadequate

preparation. (*People v. Hinton* (1984), 122 Ill. App. 3d 89, 92, 460 N.E.2d 791, 794.) In determining whether a defendant was prejudiced by the People's failure to answer discovery requests, a court must consider " '[t]he strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, the feasibility of continuance rather than a more drastic sanction, and the wilfulness of the State in failing to disclose ***.' " (*People v. Hinton* (1984), 122 Ill. App. 3d 89, 93, 460 N.E.2d 791, 794-95, quoting *People v. Weaver* (1982), 92 Ill. 2d 545, 560, 442 N.E.2d 255, 261.) Whether to admit testimony is within the court's sound discretion, and its admission is not error unless a defendant shows surprise and resulting prejudice. (*People v. Dykes* (1978), 66 Ill. App. 3d 403, 413, 383 N.E.2d 1210, 1217.) Even if the People have arguably failed to comply with discovery requests, admission of their evidence is not reversible error if the defendant does not show resulting surprise and prejudice. (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 137, 474 N.E.2d 466, 473.) In addition, it is the duty of both parties to seek clarification of discovery disclosures that are deemed inadequate or evasive. *People v. Osborne* (1983), 114 Ill. App. 3d 433, 437, 451 N.E.2d 1, 3.

Defendant's citation of *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, is inapposite. *Agurs* involved the prosecution's failure to disclose the unrequested but potentially exculpatory violent criminal record of a homicide victim whose slayer had pleaded self-defense. This is quite different from prior *inculpatory* acts of *defendant* of which he himself has full knowledge. Furthermore, even though *Agurs* was cited for a rule that the prosecution must furnish specifically requested material information during discovery or submit the question to the trial judge and that failure to make any response is seldom if ever excusable, the People certainly did not fail to make "any" response to defendant's request, and the matter was argued to the trial judge in exhaustive detail.

■ Here, defendant could not have been surprised by the evidence of his prior acts with M. He had actual notice thereof at least before trial began, probably at least a month before, and according to the People as much as a year before. It is inconceivable that earlier notice would have helped him to discredit the evidence, and defendant has not suggested how earlier notice would have done so. Even if the People had wilfully failed originally to include in their form discovery answer a specific response to defendant's request regarding prior acts, they later made disclosure in open court and elsewhere in greater detail than they would have been required to supply in answer

to the motion (which asked only for the People to disclose *whether* they would rely on prior acts). Moreover, had defense counsel sought further clarification of the People's written disclosures, he might have become aware of his own original motion's inadequacy.

■ As for defendant's former wife's testimony regarding his prior acts with his own children, it was offered in rebuttal of defendant's trial testimony that he saw nothing wrong in bathing with M. because he had raised three children of his own and that he had sometimes bathed with his own children. Defendant's original discovery motion sought to reach only prior acts that would be offered to show knowledge, intent, or motive. The People would have had no knowledge before trial that they would offer the former wife's testimony for the purpose it served, since they did not then know that defendant himself would testify in the way he did as to having raised three children of his own.

Defendant cites *People v. Byer* (1979), 75 Ill. App. 3d 658, 394 N.E.2d 632, in support of his argument that defendant's conduct with his own children was a collateral matter and impeachment in regard to it was improper; yet *Byer* states that "a contradiction is not collateral if it involves a part of the witness's account which he would not have been mistaken about if his story were true." (*Byer*, 75 Ill. App. 3d at 670, 394 N.E.2d at 640.) Defendant had testified as to bathing with his own children in an effort to show that bathing with M. would have been an unexceptional event for him. To contradict his testimony as to his own children was thus to " 'pull out the linchpin of the story.' " (*Byer*, 75 Ill. App. 3d at 669, 394 N.E.2d at 640, quoting McCormick, Evidence §47, at 99 (2d ed. 1972).) As far as the former wife's testimony is concerned, we find that the People did not fail to comply in timely fashion with the discovery request to the best of their ability and that the former wife's testimony was not impeachment on a collateral matter.

Accordingly, we hold that defendant's contentions regarding evidence of prior acts are without merit.

## II. MOTION FOR DIRECTED VERDICT

Defendant contends that at the close of the People's case in chief, the People had either made a case or not and that the trial court should have granted or denied defendant's motion for a directed verdict at that time. The People reply that defendant waived this argument by not objecting when the trial judge stated that he would reserve his decision.

■ ■ When the trial judge announced that he would reserve his

decision, defense counsel merely asked the court "when it is going to reserve its ruling until" and then proceeded to put on his case. "[T]he defendant may not sit idly by and allow alleged irregular proceedings to occur without objection, and afterward seek to reverse his conviction by reason of those same irregularities." (*People v. Mays* (1962), 23 Ill. 2d 520, 525-26, 179 N.E.2d 654, 656.) As argued by the People, it has sometimes been held that, if a motion for directed verdict at the close of the plaintiff's evidence is denied and the defendant thereafter offers any evidence in his own behalf, any error in denying the motion is waived. (See *People v. Hougas* (1968), 91 Ill. App. 2d 246, 248, 234 N.E.2d 63, 65.) Timely objection at trial allows a court to prevent most errors by sustaining the objection or instructing the jury appropriately. (*People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739, 743.) Nevertheless, "the waiver rule is not absolute," and even without objection at trial, Supreme Court Rule 615(a) permits a reviewing court to consider substantial, plain error if it was so seriously prejudicial as to prevent a fair trial. (107 Ill. 2d R. 615(a); *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739, 743.) This court has therefore considered whether reservation of a ruling on defendant's motion for a directed verdict at the close of the People's case in chief was an error affecting substantial rights of defendant.

■■ After a thorough review of the record, we hold that any error in reserving decision on defendant's motion for a directed verdict as to count III was harmless in view of the evidence on which a jury could (and did) find defendant guilty beyond a reasonable doubt on that count. If the court had ruled on defendant's motion when it was made, it would properly have been denied; thus, the court's failure to make a timely ruling was not so prejudicial as to prevent a fair trial and, accordingly, there was no plain error that would vitiate the waiver created by defendant's failure to make timely objection.

### III. OUTCRY HEARSAY

Defendant contends that testimony by M.'s mother, Karen, was offered as evidence of outcry and that it was hearsay inadmissible for such purpose because, according to the testimony, the "outcry" by M. was elicited by her mother's questioning and was not spontaneous.

■■ ■ To qualify as hearsay, evidence must be offered for the truth of the matter asserted rather than for some other purpose. (*People v. Albanese* (1984), 102 Ill. 2d 54, 70, 464 N.E.2d 206, 214, *cert. denied* (1984), 469 U.S. 892, 83 L. Ed. 2d 205, 105 S. Ct. 268.) If out-of-court statements are offered to prove their effect on a listener's state of mind or to show why the listener acted as she did, the

statements are not hearsay. *People v. Jackson* (1986), 145 Ill. App. 3d 626, 636, 495 N.E.2d 1207, 1216.

 █ In the present case, it is clear from the record that the mother's testimony of M.'s report regarding the bath with defendant was offered and received only to show that the mother had been so informed and to explain her subsequent actions. Defense counsel had already acknowledged in his opening statement that defendant had bathed with M. In addition, such testimony by both M. and (if to corroborate M.'s testimony) the mother was admissible as an exception to the hearsay rule under section 115—10 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10; *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1068, 469 N.E.2d 1137, 1146.) Moreover, even if M.'s or her mother's testimony had been hearsay, any error in admitting it would have been harmless because M. and her mother were available to be cross-examined regarding the declarations. *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1069, 469 N.E.2d 1137, 1146.

We hold that the testimony of M. and her mother regarding M.'s out-of-court report of the bath with defendant was not hearsay and that, even if it were to be so characterized, its admission would have been harmless error. Accordingly, defendant's contentions regarding the lack of spontaneity of M.'s "outcry" need not be addressed.

## IV. PREJUDICIAL HEARSAY

 █ Defendant next contends that by admitting the mother Karen's testimony as to two statements by her friend Kimmy to her regarding the bathing incident, the court allowed the jury to hear highly prejudicial and irrelevant hearsay over defendant's objection. Kimmy's first statement was that she had overheard M. and M.'s brother talking about M.'s bath with defendant. Kimmy's second statement was that she had been molested as a child and she thought that there was more to the bath incident and that Karen should question M. more extensively about it. Defendant cites *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387, in arguing that Kimmy's second statement implied that she thought defendant guilty of a crime and thus testimony of the statement was so prejudicial as to create reversible error.

The trial court cautioned the jury that testimony of neither statement by Kimmy was being admitted to prove the statement's truth but only to show that Karen was so informed. As with Karen's testimony about M.'s report of the bath (discussed in part III of this opin-

ion), we hold that the testimony regarding Kimmy's statements was not hearsay.

In *Davis*, cited by defendant, the objectionable testimony was hearsay; the victim testified that the defendant's mother had apologized to her and asked her to drop charges; and the mother testified to having asked for dismissal of charges, though not to having apologized. The testimony about Kimmy in the present case was not hearsay; Kimmy was only a friend of the complaining witness' mother, not the defendant's relative or friend; and the statement did not clearly imply that Kimmy thought defendant had committed a crime but at most merely showed that Kimmy thought he could have done so. In further contrast to *Davis*, the trial court in the present case specifically cautioned the jury regarding the testimony. And, contrary to the implication of defendant's argument, *Davis* did not rely solely on the erroneous apology hearsay. Thus, *Davis* provides little support for the present defendant.

Despite an excess of detail in the testimony, the trial court's instruction limited its effect on the jury. The statement was inherently insignificant to the question of defendant's guilt when much other evidence of greater probative value was before the jury. Thus, we hold that its probativeness in regard to explaining the events leading to a complaint against defendant outweighed any slight prejudicial effect it may have had and that, accordingly, its admission was not error.

### V. CROSS-EXAMINATION OF DEFENDANT

Defendant contends that the People were improperly permitted to cross-examine him regarding whether he had taken baths with his own children seven or eight years before bathing with M.

The trial court has discretion to determine the scope of cross-examination, and a reviewing court will not interfere unless the discretion has been abused. (*People v. Earullo* (1983), 113 Ill. App. 3d 774, 789, 447 N.E.2d 925, 935.) A trial court's discretion regarding probativeness and prejudicialness will not be disturbed if it has not been abused. (*People v. Greer* (1980), 79 Ill. 2d 103, 117, 402 N.E.2d 203, 209.) Cross-examination may inquire into collateral matters for the limited purpose of testing a witness' credibility. *People v. McGhee* (1974), 20 Ill. App. 3d 915, 922, 314 N.E.2d 313, 319.

The cross-examination was arguably beyond the scope of direct examination, though defendant had testified on direct examination as to the existence and ages of his three children. However, the questions were related to a response that defendant had given during cross-examination, and in its discretion the trial court determined that

they should be allowed in order to test defendant's credibility. Contrary to defendant's contentions, the questions were not irrelevant, they pertained to no more remote a time than necessary to test credibility in regard to the defendant's conduct with his children, and they were not unreasonably detailed in inquiring about conduct with each child. Accordingly, we hold that they were properly allowed in order to test defendant's credibility on a matter central to his intent while in the bathtub with M.

### VI. FORMER WIFE'S TESTIMONY

■■ Defendant contends that his former wife should not have been permitted to testify because her testimony concerned his prior acts and was not proper rebuttal.

Defendant's contentions as to failure of the People to list in their discovery answers the prior acts to which the former wife's testimony pertained are without merit for reasons already discussed.

Likewise, because as already discussed the subject matter of the former wife's testimony was central to defendant's credibility and intent, we reject defendant's contentions that it was collateral. (See *People v. Hunter* (1984), 124 Ill. App. 3d 516, 538, 464 N.E.2d 659, 677.) And on the authority of *People v. Cruz* (1979), 71 Ill. App. 3d 76, 388 N.E.2d 1330, which defendant himself cites, we hold that the trial court was within its discretion in admitting the testimony on the ground that its probativeness exceeded any prejudice to defendant and that in any event it might either help or harm defendant—the latter being a proposition with which defense counsel agreed during argument in the trial court.

### VII. GUILT BEYOND REASONABLE DOUBT

Defendant contends that he was not convicted beyond a reasonable doubt by competent evidence, because the jury's verdict was secured in part by admission of prejudicial hearsay, improper outcry, impeachment on collateral issues, and improper and prejudicial closing argument in rebuttal by the People. All these points already have been addressed in this opinion except for that regarding the People's closing argument.

■■ Defendant failed to raise the contention regarding rebuttal argument in his motion for a new trial. We find meritless defendant's apparent contention in his reply brief that by asserting in his motion that "[t]he verdict was against the manifest weight of the evidence," he had effectively raised the rebuttal-argument contention. Moreover, there is little persuasiveness in defendant's citation of *People v.*

*Bundy* (1920), 295 Ill. 322, 129 N.E. 189, for the proposition that improper rebuttal by a prosecutor, by itself, probably constitutes sufficient basis for reversal. *Bundy* contains no such statement, involved a case in which the People were allowed to make two closing arguments after the defense had been heard, and based its reversal of a judgment on other grounds in addition to the error of allowing two closing arguments.

When a defendant fails to make timely objections at trial and in the post-trial motion, any error in closing argument is ordinarily considered waived. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093.) However, Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)) allows a reviewing court to consider such a contention where there has been plain error. (*Lucas*, 88 Ill. 2d at 250, 430 N.E.2d at 1093.) The plain-error doctrine may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *Lucas*, 88 Ill. 2d at 251, 430 N.E.2d at 1094.

In the present case, the evidence was not at all closely balanced. In addition, any error at closing argument was minimal and was not of sufficient magnitude to deny defendant a fair trial. Although defendant's brief does not specifically discuss the parts of closing argument that defendant finds objectionable, the court has thoroughly reviewed the pertinent record. The court finds that it does not disclose any matters that could significantly have affected the fairness of defendant's trial and that it therefore does not call for invocation of the plain-error doctrine to permit consideration, despite waiver, of defendant's contentions regarding closing argument—even though, in order to safeguard defendant's interests, the court necessarily has considered them in the course of making that determination.

### VIII. SENTENCE

Defendant contends that a three-year prison sentence was excessive because defendant was 39 years old, had no prior juvenile or criminal record, had strong family and community ties, supported his children, was steadily employed, and had been recommended by a psychologist as presenting no threat to society and being a good candidate for probation with counseling.

Unless the trial court's sentencing discretion has been abused, a sentence will not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Factors for the trial court to consider include a defendant's credibility, demeanor, character, mentality, environment, habits, and age (*Perruquet*, 68 Ill. 2d at 154, 368

N.E.2d at 884), as well as the seriousness of his crime, stimuli that motivate him, and failure to show penitence (*People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764, 768). An appellate court is not to rebalance the appropriate factors in order to supplant the sentencing court's judgment (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547), especially when the sentence is within statutory limits and not clearly at variance with constitutional principles (*People v. Lambrechts* (1977), 69 Ill. 2d 544, 559, 372 N.E.2d 641, 649).

 Here, the three-year sentence was within the permissible range for a Class 2 felony. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5).) The sentencing judge imposed it after hearing testimony and argument as to the appropriate factors to be considered, including those set out in sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2). In these circumstances, we hold that the trial judge did not abuse his discretion in imposing a three-year sentence of imprisonment.

For the foregoing reasons, we affirm the judgment and sentence of the circuit court of Cook County.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.