THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY L. KING, Defendant-Appellant.

Fourth District   No. 4—88—0048

Opinion filed May 4, 1989.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

A Livingston County grand jury issued a 52-count indictment charging the defendant, Terry L. King, with one count of aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(5)), one count of aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1(a)), 20 counts of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)), 16 counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1)), five counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(d)), and nine counts of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). Two of the criminal sexual assault counts and four of the armed violence counts were nol-prossed by the State prior to trial. Following a jury trial, defendant was convicted of aggravated unlawful restraint (one count), aggravated criminal sexual assault (16

counts) and criminal sexual assault (18 counts). Having heard evidence in mitigation and aggravation, the trial court entered judgments of conviction and sentenced defendant to concurrent terms of five years' imprisonment for aggravated criminal sexual assault (one count), 14 years for aggravated criminal sexual assault (seven counts), and seven years for criminal sexual assault (two counts).

The sole issue on appeal is whether defendant was denied a fair trial when during closing argument the prosecutor stated: "[Defendant's] defense consists of nothing more than lies, misrepresentations, innuendo, [and] character assassination." Before we decide that question, a brief recitation of the facts is necessary.

The offenses charged were alleged to have been committed on or about July 7, 1987. At that time defendant was 39 years old, married, and a long-time employee of Caterpillar Tractor Company. Defendant testified as follows.

On July 6, 1987, defendant drove to his home in Fairbury, Illinois, from Ohio where he left his family with relatives. At around 11 p.m. he drove into Pontiac, where he drank several beers at a local bar until 1 a.m. the next morning. While on his way to a restaurant, defendant encountered two women walking down the middle of the street. The women were later identified as the victims M.D. and N.J. Defendant stopped his van and one of the women asked him what he wanted. When defendant asked, "You girls want to party?" they approached his van and said, "Well, what do you have?" Defendant told them the party would be in Fairbury, where he had some beer and marijuana. The women then climbed into the van. Defendant denied he threatened them with force or a weapon. Defendant opined his guests were both at least 18 years old.

Defendant drove to his house in Fairbury and escorted the women inside where they drank beer, listened to music, and smoked a marijuana cigarette. Later, defendant asked the women if they wanted to engage in sex with him and they agreed. The women participated in these activities voluntarily. Defendant then retrieved a paper sack from upstairs, which contained a rope, a pair of handcuffs, and two bandannas. After the trio undressed, defendant inquired of M.D. if she wanted to put on the handcuffs. She did not object. He then wrapped the rope around N.J.'s wrists and tied her to the coffee table. N.J. was reticent at first, but agreed to be bound when defendant told her he would only wrap the rope around the table leg and they would "see how it goes from there." Neither woman screamed or demanded to be set free.

The sexual activity was limited by defendant's inability to main-

tain an erection. Both women agreed to perform fellatio. Defendant denied that a vibrator or a knife was utilized at any time during his contact with the victims. After they had been in Fairbury for about two hours, defendant drove the women directly back to Pontiac, where they exited at a stop sign on a street unknown to defendant. Defendant denied he threatened the women or detained them against their will at any time during the evening.

N.J. testified she was 15 years old at the time she and M.D. were accosted by defendant on July 7, 1987. According to N.J., she and M.D. were walking down the street early that morning when defendant drove up in his mini-van and grabbed M.D. by the neck while holding a large knife to her throat. Defendant told N.J. to get in the van or he would kill M.D. Both women complied and defendant drove them to his house in Fairbury. Once inside the house, defendant forced them to drink beer and smoke some marijuana. Defendant threatened to kill them if they resisted or tried to escape. Defendant then forced them at knifepoint to undress and engage in vaginal, anal, and oral intercourse. Subsequently, defendant gagged and handcuffed M.D. and bound N.J.'s wrists with rope, which he attached to a coffee table. Defendant then inserted a vibrator in the vagina and rectum of N.J., after which he again engaged in anal, vaginal, and oral intercourse. Defendant handcuffed N.J. for the drive back to Pontiac. While en route, he stopped the van and placed his finger in her vagina. Defendant then dropped both the women off on a street in Pontiac and threatened to kill them if they told anyone what happened. At no time did N.J. consent to the sexual activities described.

M.D., who was 17 years old on July 7, 1987, gave testimony that substantially corroborated that of N.J. Like N.J., M.D. testified defendant brandished a knife and forced them to accompany him to his home in Fairbury, where he engaged in nonconsensual oral, anal, and vaginal intercourse. M.D. said defendant handcuffed her behind her back, gagged her with a bandanna, and tied N.J. with rope to a coffee table. Defendant also tied his victims' legs together and inserted his finger and penis into the vagina and rectum of M.D. After defendant threatened the women and ordered them to get dressed, he drove them back to Pontiac. Defendant stopped in the country on the way and inserted his finger into the vagina of M.D. It was about four or five in the morning when defendant finally dropped them off in Pontiac. M.D. denied she consented to any of the sexual activities described.

The evidence revealed after defendant's arrest the police recovered from his master bedroom a paper bag containing two bandannas,

some rags, a fishing fillet knife and sheath, two pieces of clothesline, and a pair of handcuffs.

Medical evidence showed when N.J. was examined on July 7, 1987, she had blood in the crotch of her pants, a bruise on her breast, superficial scratches on her chest, and a bruise on the back of her head and left wrist. Her labia was bruised, the inside of her vagina was torn, and her rectum was lacerated and bruised. An examination of M.D. revealed recent rectal lacerations, scratches on her back, and bruises around her wrist. There was no vaginal damage. Vaginal, oral, and anal swabs from M.D. and N.J. showed no evidence of semen. Experts concluded the medical examinations of N.J. and M.D. corroborated their complaints they had been recently vaginally and rectally raped.

During closing argument, the prosecutor made the following remark:

> "Ladies and gentlemen, I would submit to you that the evidence establishes that the defendant's version of the activities that evening is ridiculous and that it belies common sense, his defense consists of nothing more than lies, misrepresentations, innuendo, [and] character assassination."

On appeal, defendant argues the prosecutor's argument improperly characterized defendant as a liar. The record reveals defense counsel objected to the prosecutor's comment at trial, but failed to include a similar objection in a post-trial motion. In fact, defendant neglected altogether to file a post-trial motion as required by the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 116—1). The State claims this omission results in a waiver of any claimed error on appeal. We agree.

Absent plain error, the failure by a defendant to make timely objections at trial *and* in a post-trial motion waives any alleged error, including that caused by prosecutorial remarks during closing argument. (*People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), ___ U.S. ___, 102 L. Ed. 2d 263, 109 S. Ct. 274.) The plain error exception to the waiver rule provides:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (107 Ill. 2d R. 615(a).)

This doctrine may be applied in criminal cases where the evidence is closely balanced or if the claimed error was so prejudicial that defendant was denied a fair trial. (*Lucas,* 88 Ill. 2d 245, 430 N.E.2d 1091; *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) We cannot

conclude an error affecting substantial rights was committed in this case so as to justify a circumvention of the waiver rule. *Jackson*, 84 Ill. 2d at 359, 418 N.E.2d at 743.

■■ ■ Generally it is prejudicial error for a prosecutor during argument to refer to the defendant as a "liar" if the evidence does not support such an accusation. (*People v. Strange* (1984), 125 Ill. App. 3d 43, 46, 465 N.E.2d 616, 619-20; *People v. Steffens* (1985), 131 Ill. App. 3d 141, 150, 475 N.E.2d 606, 614.) Here, the statement complained of did not directly attack defendant; rather, it stated his *defense* consisted of "lies, misrepresentations, innuendo, [and] character assassination." If considered in isolation, this comment could be interpreted as an improper attack on defendant's character and his attorney. (See *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41.) However, when examined in the context of closing arguments from both sides and the evidence before the jury, we find the remark was merely a comment on the quality and strength of defendant's case and thus did not create the type of prejudice that would have denied defendant a fair trial. *People v. Lee* (1986), 151 Ill. App. 3d 510, 502 N.E.2d 399.

■■ ■ A remark may be considered harmless error if it does not materially contribute to the conviction. (*People v. Lyles* (1985), 106 Ill. 2d 373, 391, 478 N.E.2d 291, 298.) Here, even if we were to view the remark complained of as improper, we would not disturb the verdict when the prosecutor made a comment in isolation which we believe did not affect the jury's verdict. (*People v. Whitecotton* (1987), 162 Ill. App. 3d 173, 514 N.E.2d 1160.) Although defendant does not challenge the sufficiency of the evidence, we find it was the overwhelming evidence against him, rather than an isolated remark by the prosecutor, that resulted in defendant's conviction. See *People v. Medley* (1983), 111 Ill. App. 3d 444, 444 N.E.2d 269.

The judgment of the circuit court of Livingston County is affirmed.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.